**Debbie WHITWORTH and Gary Whitworth, Appellants,**

v.

**Dr. Scott L. BLUMENTHAL, Appellee.**

No. 05–97–01691–CV.

Court of Appeals of Texas, Dallas.

Oct. 22, 2001.

Shain Chapman, Law Offices of Shain V.H. Chapman, Mason, Larry Cain, Cain & Chapman, Sherman, for Appellants.

Michael C. Freden, McCue & Lee, P.C., Dallas, David McCue, McCue & Lee, P.C., Addison, for Appellee.

## OPINION

Opinion by Justice O'NEILL.

This is an appeal from the dismissal of a medical malpractice claim for failure to timely file an expert report pursuant to section 13.01 of the Medical Liability and Insurance Improvement Act. *See* TEX.REV. CIV. STAT. ANN. art. 4590i, § 13.01 (Vernon Supp.2001). We must decide whether the trial court abused its discretion in concluding the report appellants Debbie and Gary Whitworth filed was not a good faith effort to meet the Act's definition of an expert report. We also address whether the Whitworths were entitled to additional time to provide an expert report under either subsection 13.01(f) or (g) of the Act. We conclude the report tendered did not constitute a good faith effort to comply with the Act's definition of an expert report. However, we also conclude the Whitworths established they were entitled to a thirty-day grace period to comply with the Act under subsection 13.01(g). Consequently, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

### BACKGROUND

The Whitworths sued Dr. Scott L. Blumenthal after he surgically implanted an orthopedic bone screw fixation device or "pedicle screw" into Debbie Whitworth's spine. Among other things, the Whitworths alleged the pedicle screw should not have been used and caused Debbie Whitworth additional health complications. Within 180 days after the Whitworths filed their lawsuit against Blumenthal, they furnished to Blumenthal a document attempting to satisfy the requirements of an expert report in accordance with 13.01(d) of the Act. Eight months later, Blumenthal moved to dismiss with prejudice the Whitworths' claims against him, asserting the Whitworths did not furnish him an expert report within the time allowed by the statute because the document provided was not an "expert report" as defined by the Act.

Before the hearing on Blumenthal's motion, the Whitworths filed a motion under subsections 13.01(f) and (g) of the Act requesting additional time in which to furnish Blumenthal with an expert report in the event the trial court concluded that the report furnished was not an expert report as defined by the statute. Attached to the Whitworths' motion was an affidavit by their attorney asserting he believed the report initially tendered met the requirements and purpose of the Act and setting forth his efforts to obtain a more detailed report after receiving Blumenthal's motion to dismiss. After a hearing, the trial court granted Blumenthal's motion to dismiss.[1] This appeal followed.

### EXPERT REPORT

Section 13.01(d) of the Act requires a plaintiff asserting a health care liability claim to submit an expert report, along with the expert's curriculum vitae, for each defendant physician or health care provider no later than the 180th day after filing suit. *See* TEX.REV.CIV. STAT. ANN. art.

---

1. Although the trial court's order refers only to Blumenthal's motion to dismiss, the trial court implicitly denied the Whitworths' motion for additional time. In its findings of fact and conclusions of law, the trial court specifically found the Whitworths' failure to comply with section 13.01 was the result of conscious indifference, a finding only relevant to a request for additional time under subsection (g).

4590i, § 13.01(d). The Act defines an expert report as a written report providing "a fair summary of the expert's opinions ... regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex.Rev. Civ. Stat. Ann. art. 4590i, § 13.01(r)(6).

■ If a claimant furnishes a report to the defendant within the time permitted, a defendant may file a motion challenging the report. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(*l*). The trial court shall grant the motion only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the statutory definition of an expert report.[2] *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(*l*); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877–78 (Tex.2001). We review a trial court's ruling on a motion challenging a report under an abuse of discretion standard. *See id.* at 878. Under this standard, we defer to the trial court's factual determinations but review questions of law *de novo. Knie v. Piskun*, 23 S.W.3d 455, 461 (Tex.App.—Amarillo 2000, pet. denied).

■ To constitute a good faith effort under the Act, the expert report must provide, for each defendant, a fair summary of the expert's opinions with respect to each of the requirements set forth in subsection (r)(6), *i.e.* a standard of care, breach of that standard, and causation. *Palacios*, 46 S.W.3d at 878–79. If a report omits any of the statutory elements, it

cannot be a good faith effort. *Id.* at 879. The report must fulfill the dual purpose of notifying each defendant of the specific conduct called into question and providing support for a trial court to conclude the claims have merit. *Id.* In determining whether the report represents a good faith effort, the trial court's inquiry is limited to the four corners of the report. *Id.* at 878.

■ In his motion to dismiss, Blumenthal argued the Whitworths did not meet the deadline set out in subsection 13.01(d) for filing an expert report because the report filed did not address any of the Act's specified elements as they related to his treatment of Debbie Whitworth. Specifically, he argued the report did not provide a standard of care relative to his conduct, identify any breach by him, or the causal relationship between his alleged breach and Debbie's injuries. After reviewing the report, we agree with Blumenthal.

At the time the Whitworths filed their report, they had pending claims against the hospital, Blumenthal, Blumenthal's practice group, and the pedicle screw manufacturer. The report, however, does not identify any particular defendant to which it applies and instead generally asserts "the health care providers" failed to meet the standard of medical care to which Debbie was entitled. The report also raises the following "serious questions." Noting the increased risk of infection associated with the use of hardware, the report asserts post-operative infection should have been anticipated and appropriate therapy provided. It indicates this was not done and infection occurred, requiring addition-

---

**2.** The trial court's findings of fact do not contain a specific finding addressing the issue of "good faith effort." Neither party requested nor complained of the omitted finding to the trial court. Because the trial court may grant a motion to dismiss for failure to file an

adequate report only if the trial court finds the report was not a good faith effort to comply with the statutory definition, we presume the trial court made the requisite finding in this case. *See* Tex.R. Civ. P. 299.

al treatment and causing unnecessary pain and suffering. The report, however, does not specify the nature of this appropriate therapy, what party was responsible for providing it, or indicate whether it would have prevented infection. Even assuming infection occurred and caused injury, there is no indication that the development of infection was causally connected to a deviation from an identifiable standard of care.

Additionally, the report generally questioned the need to use a pedicle screw in Debbie's case, noting pedicle screws frequently break and cause pain, impairment, and disability in patients in which they are used. The report, however, failed to state how the use of the pedicle screw violated any particular standard of care. The report concludes by stating "the hardware in question and the manner in which it has been utilized has aggravated a pre-existing condition and the patient is more impaired following implantation than before its use."

From the report's conclusory language, it is impossible to determine what standard of care was applicable to Blumenthal, how Blumenthal deviated from the standard of care applicable to him, and whether the alleged deviation is causally connected to Debbie's asserted injuries. The report does not even attempt to define a standard of care applicable to a surgeon with respect to the utilization of pedicle screws. Because the report failed to inform Blumenthal of the specific conduct appellants called into question and failed to provide a basis from which the trial court could conclude the claims had merit, we conclude the report was not an "expert report" as defined by the statute and did not constitute a good faith effort to comply with the statutory definition. *See Palacios*, 46 S.W.3d at 879.

However, having concluded the report did not constitute a good faith effort to comply with the definition of an expert report does not end our inquiry. The Whitworths assert that even if the report did not constitute a good faith effort, the trial court should have given them additional time to comply with the statute under section 13.01 subsections (f) and (g) before dismissing their case. We will first consider whether the trial court abused its discretion in denying the Whitworths a thirty-day extension under subsection (f).

### SECTION 13.01(f) EXTENSION

Under subsection (f), the trial court is permitted to extend the 180–day period in which to furnish an expert report for an additional thirty days on plaintiff's motion if, after a hearing, the trial court finds good cause to grant the extension. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(f). Section (f) allows for a single extension of no more than thirty days beyond the original 180–day deadline. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(f); *Estrello v. Elboar*, 965 S.W.2d 754, 758 (Tex.App.—Fort Worth 1998, no pet.). An extension under this subsection therefore would allow a party to furnish an expert report no later than 210 days of the filing of the lawsuit. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(f); *Landry v. Ringer*, 44 S.W.3d 271, 274 (Tex.App.—Houston [14th Dist.] 2001, no pet.); *Knie*, 23 S.W.3d at 462; *Roberts v. Med. City Dallas Hosp.*, 988 S.W.2d 398, 402 (Tex.App.—Texarkana 1999, pet. denied). Because the Whitworths did not file a report complying with the statute within 210 days of filing suit, an extension under subsection (f) could not provide them relief. *See Knie*, 23 S.W.3d at 462.

### GRACE PERIOD UNDER § 13.01(g)

The Whitworths also assert the trial court erred in denying their request for a thirty-day grace period under subsection (g) of the Act. Subsection (g) states:

Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection. A motion by a claimant for relief under this subsection shall be considered timely if it is filed before any hearing on a motion by a defendant under Subsection (e) of this section.

TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(g).

After Blumenthal filed a motion to dismiss under subsection (e), but before it was heard, the Whitworths filed a motion seeking a grace period under subsection (g), asserting their failure to comply with the subsection (d) deadline, if any, was not intentional or the result of conscious indifference, but rather was due to accident or mistake. After a hearing, the trial court found that the Whitworths' failure to comply with the subsection (d) deadline was the result of conscious indifference. The trial court dismissed the Whitworths' claims with prejudice.

At trial, the parties and the trial court agreed subsection (g) applied to the case before us. On appeal, the parties again agree that subsection (g) applies. We nevertheless address whether subsection (g) applies in the first instance because the dissent concludes it does not. Specifically, according to the dissent, the Whitworths timely filed an expert report and therefore did not fail to meet a subsection (d) "deadline." The dissent concludes this interpre-

tation is required if we are to give the term "deadline" its ordinary meaning.

We agree we must use the ordinary meaning of the term "deadline" in deciding whether a party failed to comply with a subsection (d) deadline. We also agree a "deadline" is a "date or time before which something must be done." *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 580 (1993). We, however, disagree with the dissent's interpretation of the term without reference to the "something" that is required to be done. Rather, we believe we must decide whether a party failed to meet a deadline by determining whether the party failed to perform the relevant "something" within the prescribed time period. We now turn to subsection (d) to determine what the relevant "something" is.

■ Subsection (d) requires, among other things, that a claimant furnish each defendant an "expert report" no later than 180 days after filing suit or the last day of any extended period established under subsection (f) or (h)[3]. Therefore, a party fails to meet a subsection (d) deadline if the party fails to file an "expert report" within the time prescribed. The only potential ambiguity in the statute is the meaning of the term "expert report." The legislature has, however, removed any potential ambiguity by clearly defining the term "expert report." An expert report is not just the report of an expert. Rather, as noted above, the legislature has defined "expert report" as a written report providing "a fair summary of the expert's opinions ... regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX.REV.CIV. STAT. ANN. art.

---

**3.** Subsection (h) allows for an extension by agreement of the parties.

4590i, § 13.01(r)(6). Thus, if a report fails to set forth the elements required by statute, it is not, by definition, an "expert report." Here, we have concluded the Whitworths' report failed to meet the statutory definition. It necessarily follows the Whitworths did not file an expert report within 180 days of filing suit and, by not doing so, failed to comply with a deadline set out in subsection (d). *See Gutierrez v. Walker,* 50 S.W.3d 61, 65–66 (Tex.App.—Corpus Christi, pet. filed) (concluding plaintiff entitled to subsection (g) grace period after filing report that did not comply if failure to comply within deadline not intentional or the result of conscious indifference, but rather due to a mistake or accident); *Horsley–Layman v. Angeles,* 968 S.W.2d 533, 536 (Tex.App.—Texarkana 1998, no pet.) (same); *see also Hightower v. Saxton,* 54 S.W.3d 380, 385 (Tex.App.—Waco 2001, no pet.) (suggesting plaintiff can cure defects in an affidavit that does not qualify as an expert report by seeking subsection (g) grace period); *Richburg v. Wolf,* 48 S.W.3d 375, 379 (Tex.App.—Eastland 2001, pet. denied) (same).

The dissent acknowledges that the report filed was not an "expert report" for purposes of subsection (d), but nevertheless asserts the Whitworths timely filed an "expert report" for purposes of subsection (g). The dissent thereby gives the term "expert report" different meanings within the same statute, one of which is contrary to the statutory definition.

■ Texas courts are required to construe terms in accordance with their statutory definitions. *Transp. Ins. v. Faircloth,* 898 S.W.2d 269, 274 (Tex.1995); *Foreman v. Sec. Ins. Co. of Hartford,* 15 S.W.3d 214, 217 (Tex.App.—Texarkana 2000, no pet.). We presume the legislature intends the same words to have the same meaning throughout a statute. *See S. County Mut. Ins. Co. v. Ochoa,* 19 S.W.3d 452, 458

(Tex.App.—Corpus Christi 2000, no pet.). In concluding the Whitworths did not file an expert report within 180 days, we consistently apply the statutory definition of "expert report," and thereby give effect to the literal text of the statute. In reaching this conclusion, we necessarily reject the dissent's conclusion that the legislature did not always intend the term "expert report" to mean "expert report" as defined by the statute. The dissent reaches this conclusion based on a mechanism contained in the statute for challenging the "adequacy" of an "expert report." We cannot agree that this provision allows us to ignore a clear statutory definition and conclude a party has timely filed an expert report when a report has been challenged and found not to be an expert report.

Finally, our construction of subsection (g) is not only mandated by its literal text, but also is in harmony with its purpose. As we noted in *Broom v. MacMaster:*

> Unlike subsections (f) and (h), this subsection does not operate to extend the 180 day period set out in subsection (d), but instead provides for a thirty day window of time within which the plaintiff may take the actions required by subsection (d). The provision is a "safety valve" to prevent the forfeiture of claims through an accident or mistake that causes a party to fail to comply with subsection (d) in the first instance.

*Broom v. MacMaster,* 992 S.W.2d 659, 663 (Tex.App.—Dallas 1999, no pet.). Nor does our construction defeat the overall purpose of section 13.01, which is to prevent frivolous lawsuits. It merely allows a plaintiff a thirty-day grace period to provide an expert report to show the parties and the trial court the suit is not frivolous. If the plaintiff fails to do so, the trial court must then, on motion and hearing, dismiss the cause with prejudice. *See e.g., Palacios,* 46 S.W.3d at 877.

■ In reaching our decision, we reject the dissent's suggestion that the Texas Supreme Court's opinion in *Palacios* addresses the effect of subsection (g). In *Palacios*, the issue was the application of subsection (e). In construing subsection (e), the *Palacios* court concluded a trial court must dismiss a plaintiff's claims if the plaintiff files a report that does not meet the statutory requirements and the time for filing the report has passed. *See id.* No issue was presented to the supreme court with respect to the applicability of subsection (g).[4] Subsection (g), by its plain terms, applies *"notwithstanding any other provision"* of section 13.01. If this phrase is not to be written out of the statute completely, it must refer, among other things, to subsection (e). Therefore, notwithstanding subsection (e), subsection (g) allows a plaintiff a grace period if the plaintiff can show his failure to file an expert report within the deadline was not intentional or the result of conscious indifference. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01. Because the issue before the *Palacios* court was subsection (e), and subsection (g) applies notwithstanding subsection (e), we conclude *Palacios* is not instructive on a proper construction of subsection (g).[5]

For the above reasons, we conclude the Whitworths were entitled to the subsection (g) grace period provided they showed their failure to file an expert report within the time prescribed was not intentional or the result of conscious indifference, but rather was due to accident or mistake. *See Gutierrez*, 50 S.W.3d at 65–66; *Horsley–Layman*, 968 S.W.2d at 536.

We now turn to whether the trial court abused its discretion in denying the Whitworths' motion for a subsection (g) grace period. In determining whether a plaintiff has shown failure to comply with subsection (d) was not intentional or the result of conscious indifference, we find instructive those cases applying similar language under *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124 (1939). *See Broom*, 992 S.W.2d at 663; *McClure v. Landis*, 959 S.W.2d 679, 681 (Tex.App.— Austin 1997, pet. denied).

■ In determining whether a party acted intentionally or with conscious indifference, we look to the parties' knowledge and acts or the knowledge and acts of their attorney.[6] *See Broom*, 992 S.W.2d at

4. From the supreme court's recitation of facts, it appears the plaintiffs may have already received a subsection (g) grace period before the hearing on the motion to dismiss. Specifically, the supreme court noted the trial court had granted the plaintiffs an extension of time to file their expert report. While the term extension more properly applies to subsection (f), the supreme court cited both subsection (f) and subsection (g) as authorizing the late filing of the report. If the plaintiffs had already received a grace period under subsection (g), they could not rely on subsection (g) to save their case. This is because subsection (g) only applies to a plaintiff's failure to comply with a subsection (d) deadline. While the subsection (d) deadlines include subsection (f) extensions, they do not include subsection (g) grace periods. Therefore, a plaintiff cannot obtain a subsection (g) grace period by showing his failure to comply with

a previous grace period was due to accident or mistake. To the extent the dissent believes such a plaintiff could seek a grace period by again relying on their initial failure to file an expert report, we conclude such a plaintiff would be barred by the plain terms of the statute which allows a grace period of only thirty days.

5. The dissent would hold that subsection (g) applies if no report is filed within the time to provide an expert report, but would not apply if any report is filed within the time to provide an expert report. We fail to see how this distinction comports with the dissent's interpretation of Palacios.

6. The concurring opinion insightfully points out that because of the supreme court's narrow definition of "good faith" effort, an ab-

663. Proof of accident or mistake negates intentional disregard or conscious indifference. *See Roberts,* 988 S.W.2d at 403; *Horsley–Layman,* 968 S.W.2d at 536. Some excuse, but not necessarily a good excuse, is enough to show lack of intentional disregard or conscious indifference. *See Roberts,* 988 S.W.2d at 403. "Conscious indifference requires more than mere negligence." *Roberts,* 988 S.W.2d at 403 (citing *Smith v. Babcock & Wilcox Constr. Co.,* 913 S.W.2d 467, 468 (Tex. 1995) and *Horsley–Layman,* 968 S.W.2d at 536).

Furthermore, under *Craddock,* a trial court must grant a motion for new trial if the plaintiff's evidence negating conscious indifference is uncontroverted. *See Strackbein v. Prewitt,* 671 S.W.2d 37, 38–39 (Tex.1984). Other appellate courts reviewing the denial of a subsection (g) motion have likewise held that if the plaintiff's evidence negating conscious indifference is uncontroverted, the trial court abuses its discretion by denying the motion. *See Landry,* 44 S.W.3d at 275; *Tesch v. Stroud,* 28 S.W.3d 782, 787 (Tex.App.—Corpus Christi 2000, pet. denied); *Finley v. Steenkamp,* 19 S.W.3d 533, 539 (Tex. App.—Fort Worth 2000, no pet.); *Horsley–Layman,* 968 S.W.2d at 536–37. We agree with our sister courts and conclude a plaintiff is entitled to a thirty-day grace period under subsection (g) when he presents uncontroverted evidence negating conscious indifference.

Here, the Whitworths contend the trial court abused its discretion in denying their motion for a grace period because they presented uncontroverted evidence that their failure to timely comply with the Act was not intentional or the result of con-

scious indifference, but rather was an accident or mistake. In their motion, the Whitworths explained that this case was the first time their attorney, Shain Chapman, had filed a report under the new law and their attorney believed that the report filed by their expert, Dr. Merrill Reuter, satisfied the requirements and the purpose of the new statute. The Whitworths attached the affidavit of their attorney to the motion. In his affidavit, Chapman stated that Dr. Reuter, a well-qualified expert, reviewed Debbie's medical records and concluded she had a valid malpractice claim. Reuter agreed to provide a preliminary report, but explained he would not testify against Dr. Blumenthal in the event of a trial because Dr. Blumenthal was an acquaintance with whom he had traveled and lectured. Chapman explained:

> I filed Dr. Reuter's report as I felt that it met the requirements of the statute. I certainly felt that it satisfied the purpose of the statute as I understood it, namely to prevent the filing of frivolous malpractice actions. No defendant complained about the deficiency of this report or requested an additional or more detailed report. Hence, I felt the report was adequate and no one had a concern about it.

At the hearing on the motion to dismiss, Chapman reiterated that be believed the report complied with the statute. We conclude the Whitworths presented sufficient evidence to show that their failure to comply was not intentional or the result of conscious indifference, but was a mistake. *See Gutierrez,* 50 S.W.3d at 65–66 (evidence that attorney mistakenly believed report complied with Act sufficient to establish mistake such to negate con-

---

sence of good faith and a finding of accident or mistake are not mutually exclusive. Specifically, as noted by the concurrence, a determination of "good faith" is limited to a review of the four corners of the report, but a party may show accident or mistake with extrinsic evidence.

scious indifference); *Horsley–Layman,* 968 S.W.2d at 536–37 (same); *see also Bank One, Tex., N.A. v. Moody,* 830 S.W.2d 81, 84 (Tex.1992) (mistake of law can qualify as mistake sufficient to negate conscious indifference under *Craddock* ).

Blumenthal, however, asserts he controverted the Whitworths' evidence of mistake with evidence of (1) Reuter's refusal to testify at trial, and (2) the hospital's earlier successful challenge to the expert report, which showed the Whitworths knew the report did not qualify as an expert report. We disagree. First, the expert making the report is not required to testify at trial; thus, the fact Reuter would not testify against Blumenthal at trial is no evidence that the Whitworths knew the report was inadequate. Second, the hospital's motion challenging Reuter's report and the court's order sustaining that challenge both occurred well after the 180–day filing deadline. Thus, any notice provided by the hospital's challenge to the report is no evidence suggesting the Whitworths' failure to comply within the deadline was intentional or the result of conscious indifference.

Because the Whitworths' evidence was sufficient to negate intentional disregard or conscious indifference and because Blumenthal failed to controvert that evidence, we conclude the trial court abused its discretion by denying the Whitworths' motion requesting a thirty-day grace period under subsection (g). *See McClure,* 959 S.W.2d at 681. We reverse the trial court's order of dismissal and remand this cause for further proceedings consistent with this opinion.

LAGARDE, KINKEADE, WHITTINGTON, WRIGHT, BRIDGES, FRANCIS and ROSENBERG, JJ. join.

FITZGERALD, J., dissenting in which JAMES, J. joins.

MORRIS, J., concurring in which THOMAS, C.J. and KINKEADE, MOSELEY and MARTIN RICHTER, JJ. join.

FITZGERALD, Justice, dissenting.

The majority relies upon the recent Texas Supreme Court decision in *American Transitional Care Centers of Texas, Inc. v. Palacios,* 46 S.W.3d 873 (2001), to conclude that the Whitworths' report did not constitute a good faith effort to comply with the Medical Liability and Insurance Improvement Act, TEX.REV.CIV. STAT. ANN. art. 4590i (Vernon Supp.2001) (the "Act") and its definition of an expert report. I agree with that conclusion. However, because I believe *Palacios* also compels the conclusion that subsection (g) of the Act does not apply and, therefore, the Whitworths were *not* entitled to a thirty-day grace period under that provision, I must respectfully dissent.

### The *Palacios* Directive

The Texas Supreme Court recently determined the standards for reviewing an expert report under the Act. *See Palacios,* 46 S.W.3d at 875–76. In that case, the court acknowledged the significance of expert testimony to a medical-malpractice case and identified the early elicitation of expert witness opinions as "an obvious place to start in attempting to reduce frivolous lawsuits." *Id.* To that end, the Legislature created section 13.01 of the Act, requiring a medical-malpractice plaintiff to produce a report setting forth expert opinions fundamental to the legitimacy of her case. And to that end, the *Palacios* court set forth a five-step analysis for expert reports required by the Act:

[1] in section 13.01, the Legislature requires medical-malpractice plaintiffs, within 180 days of filing suit, either to provide each defendant physician and

health-care provider with an expert report and the expert's curriculum vitae, or to nonsuit the claims. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(d). [2] If the plaintiff fails within the time allowed either to provide the expert reports and curriculum vitae, or to nonsuit the case, the trial court must sanction the plaintiff by dismissing the case with prejudice, awarding costs and attorney's fees to the defendant, and ordering the forfeiture of any applicable cost bond necessary to pay that award. *Id.* § 13.01(e). [3] If the plaintiff does timely file a report, the defendant may move to challenge the adequacy of the report, and the trial court must grant the motion if "it appears to the court . . . that the report does not represent a good faith effort to comply with the definition of an expert report." *Id.* § 13.01(*l*). [4] The statute defines an expert report as "a written report by an expert that provides a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered . . . failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." § 13.01(r)(6). [5] If a trial court determines that an expert report does not meet these statutory requirements and the time for filing a report has passed, *it must then dismiss with prejudice the claims against the defendant who has challenged the report. Id.* § 13.01(e).

*Id.* at 877 (numbering and emphasis added).

Applying the *Palacios* step-by-step analysis to the Whitworths' expert report yields the following conclusions:

1. the Whitworths did provide their expert's report and curriculum vitae to Dr. Blumenthal within 180 days of filing suit, as required by section 13.01(d);

2. thus, in the first instance, the claim against Dr. Blumenthal avoided dismissal under section 13.01(e);

3. Dr. Blumenthal did file a motion challenging the adequacy of the Whitworths' report pursuant to section 13.01(*l*);

4. the trial court concluded, and the majority agrees, that the report does not meet the statutory requirements set forth by section 13.01(r)(6) and is, therefore, inadequate;

5. therefore, because the time for filing a report had passed, the trial court correctly dismissed the claims against Dr. Blumenthal with prejudice pursuant to section 13.01(e).

*See id.* According to the *Palacios* directive, once a court has concluded that an expert report is inadequate and that the time for filing has passed, dismissal is mandatory. *See id.* at 880 (having concluded expert's report was not a good-faith summary of section 13.01(r)(6) requirements, and 180–day period having passed, section 13.01(e) required court to dismiss with prejudice).

The Whitworths' reliance upon subsection (g) to rescue them from the sanctions of section 13.01(e) is misplaced.[1] Subsec-

---

1. Subsection (g) of the Act states:
   Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection. A motion by a claimant for relief under this subsection shall be considered timely if it is filed before any hearing on a motion by a defendant under Subsection (e) of this section.

tion (g) is not implicated in the fifth step of the supreme court's analysis for good reason: if the plaintiff had "failed to comply with a deadline established by Subsection (d)," as subsection (g) envisions, then that situation would have been addressed in the second step of *Palacios'* blueprint. The case would have been dismissed if the missed deadline were either intentional or the result of conscious indifference; the Whitworths would have been given a thirty-day grace period if the missed deadline were merely the result of an accident or a mistake.

As it is, according to *Palacios,* when the trial court concluded that the expert report was inadequate and the time for filing was past, it had no choice but to dismiss the claims against Dr. Blumenthal. I would affirm that dismissal.

### The Language and Purpose of the Act

The plain language of subsection (g) of the Act supports this application of the *Palacios* analysis. Neither the Whitworths nor the majority asserts that the subsection is ambiguous. "When a statute is clear and unambiguous, courts need not resort to rules of construction or extrinsic aids to construe it, but should give the statute its common meaning." *St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 505 (Tex.1997). Thus, when subsection (g) speaks of failing to comply with a "deadline," that word must be read in accordance with its common meaning. In ordinary usage, a "deadline" is the date by which something is required to be accom-

plished. It speaks to *when* something must be done, not to *what* must be done. The Whitworths did not "fail to comply with a deadline established by Subsection (d)," because they filed their expert report before the date by which subsection (d) required it to be filed.[2] Therefore, the Whitworths do not fall within the scope of subsection (g).

Despite my conclusion that a "deadline" focuses on time and not on content, the circumstances compel me to address the majority's content-related reasoning that equates an inadequate expert report with no expert report. The majority appears to follow this line of reasoning:

- subsection (d) requires an expert report be filed by a certain deadline;

- subsection (r)(6) defines "expert report" to include certain specific criteria;[3]

- a proposed report that does not include the criteria of subsection (r)(6) is, by definition, *not* an "expert report";

- if a party files such a report—i.e., one that does not satisfy subsection (r)(6)—then she has not filed an "expert report" at all;

- therefore, she cannot possibly have filed an "expert report" by the deadline in subsection (d), and subsection (g) must apply.

I have significant concerns with this reasoning and the result it achieves.

---

TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(g).

**2.** The trial court's Findings of Fact indicate that February 12, 1997, was the 180th day after suit was filed. The report was filed on December 16, 1996.

**3.** That subsection states:
"Expert report" means a written report by an expert that provides a fair summary of

the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.
TEX.REV.CIV. STAT.ANN. art. 4590i, § 13.01(r)(6).

Initially, the majority insists that whenever the words "expert report" are used together in this statute, they can mean *only* a report that adequately meets the criteria of subsection (r)(6). This reasoning ignores an entire category of reports that are within the Act's contemplation: those that are proffered by a party as expert reports, but which are eventually adjudged inadequate for that purpose. We know the Act contemplates such reports, because it incorporates a mechanism for challenging and evaluating them. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(*l*).[4] Some number of expert reports will be evaluated this way and will be determined inadequate, but nothing in the Act suggests that inadequate reports are deemed never to have existed.[5] *See id.*

In common usage and in the Act itself, there is a difference between work that is inadequate and work that has never been done. I would conclude that the Legislature intended the definition of "expert report" in subsection (r)(6) simply to set forth the standards for an adequate expert report, not to consign inadequate expert reports to veritable non-existence.

This analysis should not raise concerns about disparate treatment of differently-situated plaintiffs, i.e. those who file no report as opposed to those who file an inadequate report in a timely fashion. In truth, the Texas Legislature has created a legislative scheme that balances the competing concerns of all plaintiffs and all defendants in a particular manner that we must respect. According to that scheme, for example, a plaintiff who misses an ear-

ly filing deadline by accident or by mistake receives a grace period to cure her blameless error. But the defendant is still guaranteed a relatively speedy initial protection: if no expert is found within the grace period who will place an imprimatur on the plaintiff's claim, then that claim will be dismissed. This threshold process exemplifies the Legislature's efforts to craft procedures that would quickly identify, and thus reduce, frivolous lawsuits. *See Palacios*, 46 S.W.3d at 876–77 (citing HOUSE COMM. ON CIV. PRAC., BILL ANALYSIS, TEX. H.B. 971, 74th Leg., R.S. (1995)).

Within section 13.01's threshold process, all plaintiffs are held to the same two-pronged duty: they must *timely* produce an *adequate* expert report. The Act sets requirements for each prong, but neither is harsh or unforgiving.

- Subsection (g) addresses the timeliness prong: it recognizes that mistakes can be made concerning timeliness, and it provides a grace period when those mistakes occur.

- Subsection (*l*) addresses the adequacy prong: it incorporates into the expert report definition a "good faith" standard that gives a plaintiff some margin within which to work. Her proffered report need not marshal all her proof, nor present evidence in formal summary judgment or trial form. It need only provide enough information on each of the statutory elements (i.e., standard of care, breach and causation) to inform the defendant of the specific conduct called into question and to provide a

---

4. This subsection states:
   A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in Subsection (r)(6) of this section. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(*l*).

5. "Adequacy," the term used in subsection (*l*), is not defined by the Act. Therefore we give it its ordinary meaning: sufficiency for a specific requirement. *See* WEBSTER'S NINTH NEW COLLEGIATE DICT. 56 (1985). "Inadequate" simply means insufficient. *Id.* at 607.

basis for the trial court to conclude the claims have merit. *See Palacios*, 46 S.W.3d at 878–79 ("expert report must represent only a good-faith effort to provide a fair summary of the expert's opinions").

Thus, the Act provides an appropriate "remedy" for the medical-malpractice plaintiff on each prong: more time (i.e., a 30–day grace period) when the plaintiff's focus is timeliness, and a more flexible substantive standard (i.e., good faith compliance) when the plaintiff's focus is on adequacy. The Act provides realistic requirements for all plaintiffs at all stages of the litigation.

Finally, as the *Palacios* court noted, the Legislature believed early elicitation of expert witness opinions was a significant first step in attempting to reduce frivolous lawsuits. *Id.* at 875–76. I believe limiting application of subsection (g) to early issues of timeliness supports this purpose of the Act in several ways. First, the limitation encourages each plaintiff to make her first effort her best effort, rather than relying upon an automatic second chance if her first is deemed inadequate.[6] Second, although the majority is confident that subsection (g) could only be applied once in each case, I do not share their confidence. Subsection (g) is not limited by its own terms to a one-time application as subsection (f) is limited. There may be any number of "mistakes" that could be made by the attorney in subsequent reports that would result in rulings that—once again—no "expert report" had been filed by the

subsection (d) deadline. Third, imposing this limitation would avoid the kind of late-in-the-day analysis of a plaintiff's conduct that occurred in this case.[7] And, fourth, the Legislature could easily have made provision for either submitting amended expert reports or allowing extensions to refile them after a finding of inadequacy, but it did not do so.

"Courts must take statutes as they find them." *St. Luke's Hosp.*, 952 S.W.2d at 505. Our task is to apply the Legislature's scheme to the facts of this case. The Act and *Palacios* compel the same conclusion: the Whitworths were not entitled to relief under subsection (g) of the Act. The trial court correctly dismissed their action.

For all the reasons stated herein, I would affirm the trial court's judgment.

MORRIS, Justice, concurring.

The issue in this case on which the members of the Court cannot agree is whether a plaintiff who files an inadequate expert report may be entitled to a thirty-day "grace period" within which to amend or file a new report. The dissent relies on the Texas Supreme Court's recent opinion in *American Transitional Care Centers of Texas, Inc. v. Palacios*, 46 S.W.3d 873 (Tex.2001), to conclude that once a trial court finds a plaintiff's expert report to be inadequate, the only course of action open to the trial court is to dismiss the plaintiff's claims with prejudice. The majority, on the other hand, concludes that a plaintiff who has furnished an inadequate report may seek a thirty-day grace period to

---

6. While subsection (g) is not written as an automatic grant, it is difficult to imagine a situation in which the attorney proffering the inadequate expert report could not assert that he "mistakenly" believed the report was adequate, just as counsel for the Whitworths has asserted in this case.

7. *Palacios* makes clear that review of the adequacy of an expert report is limited to the substance of the report itself. *Id.* at 878 ("the only information relevant to the inquiry is within the four corners of the document"). A subsection (g) determination, on the other hand, must evaluate the conduct of the plaintiff or her attorney and determine whether that conduct was blameworthy.

correct the report. I agree with the majority's conclusion that neither *Palacios* nor the statute in question dictates that the mere filing of an inadequate report prevents a plaintiff from seeking relief from immediate dismissal. I do not embrace completely, however, the majority's reasoning. Therefore, I write separately.

Section 13.01(d) of the Medical Liability and Insurance Improvement Act mandates that a plaintiff in a health care liability action timely furnish an expert report for each defendant or voluntarily dismiss the case.[1] TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(d) (Vernon Supp.2001). The requirements for the expert report are set out explicitly in section 13.01(r)(6).[2] *Id.* § 13.01(r)(6). A close reading of section 13.01 reveals that it does not provide a specific mechanism for challenging whether a report is in compliance with the requirements of subsection (r)(6). Nonetheless, such challenges are recognized by section 13.01(*l*), which states:

> A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in Subsection (r)(6) of this section.

*Id.* § 13.01(*l*). Notably, in the entirety of section 13.01, it is subsection (*l*) alone that recognizes an expert report may not be adequate and may be challenged on that basis.

In *Palacios*, the Texas Supreme Court examined what constitutes an adequate report as well as the meaning of the phrase "good faith effort to comply" as contemplated by section 13.01(*l*). *See Palacios*, 46 S.W.3d at 878. The court began by restricting the determination of both "adequacy" and "good faith" to an examination of the report itself. *See id.* The court went on to conclude that to constitute a good faith effort, a report must fulfill the two purposes an expert report was designed to meet and must not omit any of the statute's specific requirements. *See id.* at 879. *Palacios*, therefore, compels one to conclude there is virtually no difference between an adequate report—one meeting the requirements of section 13.01(r)(6)—and a good faith effort. In effect, a good faith effort always produces a report that satisfies all statutory requirements. *Palacios*'s interpretation of section 13.01(*l*) produces the narrowest possible definition of "good faith effort."

The conclusion that there is no real difference between an adequate report and a good faith effort arguably is necessitated by the statute's structure. Under section 13.01, so long as a report constitutes a good faith effort to comply with the statutory requirements, regardless of its clarity

---

1. Section 13.01(d) provides:

   Not later than the later of the 180th day after the date on which a health care liability claim is filed or the last day of any extended period established under subsection (f) or (h) of this section, the claimant shall, for each physician or health care provider against whom a claim is asserted: (1) furnish to counsel for each physician or health care provider one or more expert reports, with a curriculum vitae of each expert listed in the report; or (2) voluntarily nonsuit the action against the physician or health care provider.

2. Section 13.01(r)(6) defines an expert report as follows:

   "Expert report" means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between the failure and the injury, harm, or damages claimed.

or specificity, the report stands as the one to be used by both the defense and the trial court to determine the basis and merits of the plaintiff's claims. There is simply no provision in the statute requiring a plaintiff's report, made in good faith, to be restated or improved. Because the statute does not provide a defendant a means by which to force a plaintiff to redo his "good faith effort to comply," the good faith effort as contemplated by section 13.01($l$) cannot be anything less than a report meeting the requirements of subsection (r)(6). Otherwise, the very purposes for which the expert report requirement was designed would be frustrated.

Because of the extremely narrow definition of "good faith effort" compelled by section 13.01 and set out in *Palacios*, the majority correctly concludes the trial court did not abuse its discretion in finding the Whitworths' expert report was inadequate. Given the inadequacy of the Whitworths' report, the next step is to determine what remedy was available to Blumenthal, the defendant in this case.

Section 13.01 does not specify a remedy for a defendant who receives a report found to be inadequate by the trial court. *Palacios* indicates that once there has been a determination of inadequacy, the proper remedy is for the trial court to dismiss the plaintiff's claims with prejudice. *See id.* at 877. Importantly, *Palacios* specifies such dismissal is to be made pursuant to section 13.01(e). *See id.* Indeed, this is the remedy Blumenthal sought when he challenged the Whit-

worths' report and moved to dismiss their claims. But section 13.01(e) says nothing about inadequate reports. *See* TEX.REV. CIV. STAT. ANN. art. 4590i, § 13.01(e) (Vernon Supp.2001). It directs only that a plaintiff's claims be dismissed with prejudice when the plaintiff fails to timely provide an expert report and does not voluntarily dismiss his claims as required by subsection (d).[3] Because *Palacios* dictates dismissal solely under section 13.01(e) as the appropriate remedy for submitting an inadequate report, a significant legal consequence attends the supreme court's ruling: a plaintiff's inadequate report is the legal equivalent of not filing any report at all. This consequence flows from the dependency of section 13.01(e) on section 13.01(d). Section 13.01(d) requires a report conforming with subsection (r)(6)'s definition, and anything less fails to be an expert report for the purposes of section 13.01(d). Under 13.01(e), therefore, a plaintiff who files an inadequate report is subject to having his claims dismissed because he has failed to comply with 13.01(d) by not filing an expert report within the time required.

Section 13.01(e) provides for mandatory dismissal, and *Palacios* accordingly speaks in terms of mandatory dismissal: "If a trial court determines that an expert report does not meet these statutory requirements and the time for filing a report has passed, it must then dismiss with prejudice the claims against the defendant who has challenged the report." *Palacios*, 46 S.W.3d at 877. The dissent focuses on this

---

**3.** Section 13.01(e) states specifically:

If a claimant has failed, for any defendant physician or health care provider, to comply with subsection (d) of this section within the time required, the court shall, on the motion of the affected physician or health care provider, enter an order awarding as sanctions against the claimant or the claimant's attorney:

(1) the reasonable attorney's fees and costs of court incurred by that defendant;

(2) the forfeiture of any cost bond respecting the claimant's claim against that defendant to the extent necessary to pay the award; and

(3) the dismissal of the action of the claimant against that defendant with prejudice to the claim's refiling.

language in *Palacios* to conclude that the supreme court's opinion denies a plaintiff who furnishes an inadequate report the option of seeking to file a new report under 13.01(g)'s thirty-day grace period.[4] *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(g) (Vernon Supp.2001). Neither *Palacios* nor the statute supports this conclusion.

Mandatory dismissal under section 13.01(e) is a separate issue from obtaining a grace period under section 13.01(g). Section 13.01(g) provides equitable relief as contrasted to the legal remedy prescribed by subsection (e). *Palacios* neither directly nor indirectly addresses the plaintiff's right to obtain a grace period after his expert report has been found inadequate. The supreme court simply has not yet addressed the issue. No one disputes, however, that a plaintiff who fails to furnish any expert report is subject to mandatory dismissal under section 13.01(e). Moreover, it is also undisputed that such a plaintiff may seek equitable relief from section 13.01(e)'s required dismissal by requesting a section 13.01(g) grace period. Because an inadequate report is the same under *Palacios* as no report at all, there is no reason why a plaintiff whose claims are subject to dismissal under section 13.01(e) for filing an inadequate report should be treated differently than a plaintiff whose claims are subject to dismissal under 13.01(e) for failing to file any report. A close examination of the relationship between sections 13.01(d), (e), and (g) compels this conclusion.

The statutory scheme, as *Palacios* perceives it, provides a defendant who receives an inadequate report with the legal remedy of dismissal under section 13.01(e), which, in turn, authorizes dismissal only for failure to comply with section 13.01(d) within the time required. In other words, a trial court's finding under section 13.01(*l* ) that a report is not a "good faith effort," and thus not adequate, necessarily means the plaintiff has failed to furnish a report by the deadline prescribed in 13.01(d). Otherwise, a plaintiff's claims could not be dismissed under subsection (e).

It is significant that section 13.01(g), like section 13.01(e), operates conditionally through section 13.01(d). A plaintiff may seek relief under section 13.01(g) when he has "failed to comply with a deadline established by Subsection (d)." *Id.* A plaintiff's failure to comply with a section 13.01(d) deadline is the conditional predicate for the application of both subsections (e) and (g). Neither section operates absent the plaintiff's failure to comply with section 13.01(d). In effect, if a plaintiff is subject to a section 13.01(e) dismissal, the very facts that make him subject to such a dismissal also make available for him section 13.01(g)'s equitable grace period. Law and equity walk hand in hand through section 13.01.

The dissent argues that a plaintiff who has filed an inadequate report cannot seek relief under 13.01(g) because he has *not* "failed to comply with a deadline." According to the dissent, any report, so long

---

4. Section 13.01(g) states:

   Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection. A motion by a claimant for relief under this subsection shall be considered timely if it is filed before any hearing on a motion by a defendant under Subsection (e) of this section.

as it is filed timely, is sufficient to comply with the deadline requirement. This cannot be true. If it were true, a plaintiff who has filed an inadequate report could never be dismissed under section 13.01(e) as required by *Palacios* because there would never be a failure to comply with section 13.01(d) "within the time required." Again, dismissal under subsection (e) is for failure to comply with a section 13.01(d) deadline.

Because the Whitworths' claims were subject to dismissal under section 13.01(e) due to their failure to comply with subsection (d), they were also entitled to seek relief under section 13.01(g). Entitlement to seek relief, however, is not the same as entitlement to the relief sought. To be entitled to a grace period under section 13.01(g), the Whitworths had to show that their failure to furnish an adequate expert report was not intentional or the result of conscious indifference but was the result of accident or mistake. *See id.* Where a plaintiff has already filed an inadequate report, a showing of accident or mistake may be more difficult. This is so because a finding of inadequacy presupposes that the initial report was not submitted as a "good faith effort to comply" with the statutory requirements for expert reports. *Id.* § 13.01(*l*). Normally, it would be conceptually difficult to reconcile a claim that something was an accident or mistake with a prior judicial declaration that the plaintiff's attempt to furnish a report was not a "good faith effort." But where the definition of "good faith effort" is as narrow as the one the supreme court has set forth, an absence of good faith and a showing of accident or mistake are not mutually exclusive.

As stated in *Palacios,* whether a plaintiff made a good faith effort to provide an adequate expert report is determined solely by an examination of the report itself. *Palacios,* 46 S.W.3d at 878. A showing of "accident or mistake" under section 13.01(g) is not so limited. Under section 13.01(g), a plaintiff can present evidence of the circumstances surrounding the submission of the report. For example, a plaintiff could present evidence that he accidentally failed to provide a page of his expert report containing testimony about the standard of care to be applied in the case. Under *Palacios,* the report would not be considered adequate or a good faith effort to comply because it omits one of the statutory requirements. *See id.* at 879. Nonetheless, under the equitable standards embodied in section 13.01(g), the trial court could find the plaintiff's failure to include the page was truly an accident or mistake, rather than intentional or the result of conscious indifference. Upon such a finding, the plaintiff would be entitled to a thirty-day grace period to submit an adequate report and thus avoid dismissal under section 13.01(e).

Because I agree with the majority's conclusion that the Whitworths showed their failure to file an adequate report was a mistake rather than intentional or the result of conscious indifference, I concur in the result reached by the majority.[5]

---

5. I do not necessarily concur, however, in a statement made in footnote 4 of the majority opinion. In that footnote, the majority concludes a plaintiff may seek relief under section 13.01(g) only once. That issue need not be addressed in this appeal and, therefore, I express no opinion on it.