**Harriett FISCHER, Individually and as Executor of the Estate of Harry Fischer, Appellants,**

v.

**TENET HOSPITALS, LIMITED, d/b/a Doctors Hospital and Horizon/CMS Healthcare Corporation, Inc., d/b/a Doctors Healthcare Center, Appellees.**

No. 05–99–00297–CV.

Court of Appeals of Texas, Dallas.

Jan. 17, 2002.

---

**112**

Carolyn Mitchell, Law Office of Carolyn Mitchell, Fort Worth, for appellants.

Andrea M. Kuntzman Cataland, Charles T. Frazier, Jr., Gregory J. Lensing, Cowles & Thompson, P.C., Jacqueline S. Kelly, Christine D. Roseveare, Strasburger & Price, L.L.P., Dallas, for appellee.

Before Justices BRIDGES, O'NEILL, and FITZGERALD.

## OPINION

Opinion By Justice FITZGERALD.

Harriett Fischer, individually and as executor of the Estate of Harry Fischer ("appellant"), sued Tenet Hospitals, Limited d/b/a Doctors Hospital and Horizon/CMS Healthcare Corporation, Inc. d/b/a Doctors Healthcare Center ("appellees") for medical malpractice. The trial court dismissed appellant's claim for failure to provide an expert report that met the requirements of the Medical Liability and Insurance Improvement Act, Tex.Rev. Civ. Stat. Ann. art. 4590i (Vernon Supp. 2001) (the "Act"). We reverse the trial court's order granting the appellees' motions to dismiss and remand this cause to the trial court.

### BACKGROUND

Harry Fischer, 76 years of age, was admitted to Doctors Hospital for treatment of a urinary tract infection. According to appellant, Fischer developed a Stage IV pressure ulcer while at Doctors Hospital. Fischer's family placed him at Doctors Healthcare Center, a nursing home, for treatment of the ulcer. After arriving at the nursing home, Fischer allegedly suffered various cuts, abrasions, and bruises on his face. Fischer died four months later. Subsequently, appellant sued Doctors Hospital and Doctors Healthcare Center for negligence, gross negligence, fraudulent inducement, violation of the Deceptive Trade Practices Act, breach of fiduciary duty, breach of contract, assault and battery, and intentional infliction of emotional distress. Each cause of action arose from appellees' alleged medical malpractice in caring for Fischer.

### The Expert Report

The Act requires medical-malpractice plaintiffs, within 180 days of filing suit, either to provide each defendant physician and health-care provider with an expert report and the expert's curriculum vita, or to nonsuit the claims. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(d). Appellant timely filed a report in the form of a letter from registered nurse Mildred Hogstel to Fischer's attorney, Carolyn Mitchell. The letter stated in its entirety:

Dear Ms. Mitchell:

It is my opinion that the nursing care at Doctors Hospital, Dallas was below the standard of good nursing care by allowing Mr. Harry Fischer to develop a Stage IV pressure ulcer (bed sore) of the coccyx while a patient in their facility for seventeen days from December 26, 1996 to January 12, 1996. Almost all pressure ulcers can be prevented with proper nursing care.

I also have serious concerns and questions about the signs of facial injury of Mr. Fischer at Doctors Healthcare Center, Dallas. Photographs of Mr. Fischer

taken on February 19, 1996 show a red area on the tip of the nose, red blood around the left nostril, and blood on the front, lobe, and outer area of the left ear. Although bruises on the arms and legs in older people may be due to fragile skin, which is common in older people, and minor accidental trauma, injuries about the face are uncommon and usually caused by physical abuse such as intentional trauma.

I am a registered nurse licensed to practice nursing in Texas and have national certification in gerontological nursing from the American Nurses Credentialing Center of the American Nurses Association. I am familiar with the nursing care of patients with chronic health problems and especially the prevention, treatment, and care of pressure ulcers (bed sores). I have presented a public program on elder abuse recently in Tarrant County and have submitted an article on elder abuse to the Journal on Gerontological Nursing for national publication.

If and when you need additional information or assistance, please let me know.

Very truly yours,

[signature]

Mildred O. Hogstel

### The Motions to Dismiss

Appellees claimed the Hogstel report was inadequate and filed motions to dismiss. They argued the report did not satisfy the Act's definition of "expert report" as to either the hospital or the nursing home because (1) it did not establish the standard of care applicable to either defendant, (2) it did not adequately describe the alleged breaches of the standard of care, (3) it did not allege the acts and/or omission of either defendant that purportedly caused Fischer's death, and (4) it was authored by a registered nurse who was not qualified to testify as to causation. Appellees contended that because the report was insufficient, appellant effectively failed to file an expert report by the 180–day deadline.

Appellant filed a response to the motions that was verified by her counsel. The response argued that Hogstel was a proper expert for this case because the case relates to the standards of care provided by a nursing home and a hospital. Appellant argued the report complied with the definition of "expert report" by giving a fair summary of Hogstel's opinions and by showing the claim was not frivolous.

Alternatively, appellant asked the trial court for a thirty-day grace period pursuant to section 13.01(g) of the Act. In this vein, appellant argued that if the report was insufficient it was the result of a mistake and not any intentional act or conscious indifference. According to appellant's counsel, she believed the report was adequate when she filed it. Counsel stated that the fact she filed the report, along with the cost bonds, demonstrates she did not act with conscious indifference toward the court or the Act. Finally, after appellees filed their motions to dismiss, appellant's counsel wrote to appellees offering to supplement the expert report on file with another expert's report. Appellees did not controvert appellant's counsel's assertions of her belief or intentions.

### The Trial Court's Ruling

The trial court granted appellees' motion to dismiss and entered an order dismissing appellant's claims with prejudice. At appellant's request, the trial court subsequently issued the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. The Court finds that Plaintiffs served the report of Mildred Hogstel on counsel for Defendant Tenet Hospitals Limited, d/b/a Doctors Hospital in an attempt to satisfy the requirements of Article 4590i.

## CONCLUSIONS OF LAW

1. The Court concludes the purported expert report of Mildred Hogstel, R.N. does not meet the requirements of Article 4590i.

2. The Court concludes Plaintiffs have failed to provide Defendant Tenet Hospitals Limited, d/b/a Doctors Hospital with an expert report, within the time required by Article 4590i, therefore, dismissal of this matter with prejudice to its refiling is appropriate, pursuant to Article 4590i; § 13.01(e)(3).

### The Motion for New Trial

After the trial court granted the motions to dismiss, appellant filed both a motion for rehearing and a motion for new trial. The trial court's docket sheet, which is part of the record before this Court, indicates the motions were heard together on February 8, 1999, and were taken under advisement. The docket sheet contains the following notation for the next day:

2–9–99 Motion for New Trial granted and Motion for Re-hearing is moot. Bill Sheehan, Judge

The final entries on the docket sheet are initialed by the court clerk and state:

2–10–99 Spoke w/ Ware's secty; gave above ruling.

2–10–99 P—attempted to call, 3 times today, not successful

The trial court did not issue a written order on the motion for new trial; thus, the motion was overruled as a matter of law seventy-five days after appellant's case was dismissed.

Appellant challenges the dismissal of her lawsuit in three issues. She argues first that, contrary to the trial court's ruling, her expert report *did* meet the requirements of the Act or, alternatively, that she should have been allowed a grace period to cure any inadequacies. Second, appellant argues the dismissal of her lawsuit, without opportunity to cure any inadequacies in the report, violated her constitutional rights to due process. Finally, appellant argues the trial court's docket notation should be treated as an effective order granting her motion for new trial. Because this final issue addresses our jurisdiction, we address it first.

### EFFECT OF DOCKET SHEET NOTATION

Appellant argues that because she was not informed of the trial court's ruling on her motion for new trial, this Court should treat the February 9th docket notation granting the motion as an effective order.[1] An order granting a new trial must be written and signed. Tex.R. Civ. P. 329b(c). Neither a trial judge's oral pronouncement granting a motion for new trial nor a docket entry indicating that a motion for new trial was granted can substitute for the written order required by rule 329b. *Faulkner v. Culver*, 851 S.W.2d 187, 188 (Tex.1993). Appellant candidly concedes that "existing Texas law" does not support her position, but she argues for a "modification" of that law because of

1. Appellant avers on appeal that the court clerk later misinformed her counsel that no ruling had been entered on the motion for new trial. This allegation is not part of the record and cannot be considered. However, such an allegation would not affect our resolution of this issue even if it were part of the record before us.

the factual circumstances in her case, *i.e.,* the clerk's failure to notify her of the ruling and subsequent misinformation concerning the ruling. As an intermediate court, we must decline appellant's invitation to modify such settled law. If exceptions to the written order requirement are to be made, they must be made by the supreme court, either through its rulemaking procedure or through consideration of the equities of a particular case. We decide appellant's third issue against her.

### ADEQUACY OF EXPERT REPORT

Appellant's first issue avers that the trial court improperly granted appellees' motions to dismiss because her expert's report and her response to those motions met the requirements of the Act.

### *Expert Qualification*

 As a threshold matter, appellees contend that Hogstel, as a registered nurse, is *not* qualified as an expert under Texas law to testify concerning causation; appellees argue only a physician may offer this testimony. The Act identifies proper experts for its purposes. It distinguishes between experts giving opinion testimony concerning a physician's conduct and those giving testimony concerning the conduct of nonphysician health care providers. In this case, Hogstel offered her opinions concerning nonphysician health care providers—a nursing home and a hospital—and thus was required to have "knowledge of accepted standards of care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim." TEX. REV.CIV. STAT. ANN. art. 4590i, § 13.01(r)(5)(B). This standard has no express or implied requirement that the expert be a physician.[2] Hogstel's curriculum vita clearly complies with the requirements

of this subsection, and appellees do not claim otherwise. Accordingly, appellees' argument that Hogstel is not qualified because she is not a physician fails.

### *Good Faith Effort*

If a plaintiff fails within the time allowed either to provide the required expert reports and curriculum vitae or to nonsuit the case, the trial court must sanction the plaintiff by dismissing her case with prejudice, awarding costs and attorney's fees to the defendant, and ordering the forfeiture of any applicable cost bond necessary to pay that award. *Id.* § 13.01(e). If the plaintiff does timely file a report, the defendant may move to challenge the adequacy of the report, and the trial court must grant the motion if "it appears to the court ... that the report does not represent a good faith effort to comply with the definition of an expert report." *Id.* § 13.01(*l*). The statute defines an expert report as "a written report by an expert that provides a fair summary of the expert's opinions ... regarding applicable standards of care, the manner in which the care rendered ... failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." § 13.01(r)(6). Thus, to determine the adequacy of appellant's proffered expert report, we must ask whether the report represents a "*good faith effort*" to provide a fair summary of Hogstel's opinions regarding the applicable standard of care, the manner in which Hogstel alleged the appellees failed to meet that standard, and the causal relationship between that failure and the injury claimed by appellant.

After the parties in the case at bar submitted their briefs to this Court, the

---

**2.** Only section 13.01(r)(5)(A) requires the testimony of a physician to establish whether

another physician departed from accepted standards of medical care.

Texas Supreme Court issued its opinion in *American Transitional Care Centers of Texas, Inc. v. Palacios*, 46 S.W.3d 873 (Tex.2001). The *Palacios* opinion answered a number of questions concerning evaluation of expert reports under the Act. First, the court held that a trial court's dismissal of a case pursuant to section 13.01(e) of the Act is reviewed under an abuse of discretion standard. *Id.* at 875. Next the court addressed the requirements for an adequate expert report under the Act, stating:

> We further hold that to constitute a good-faith effort to provide a fair summary of an expert's opinions under section 13.01(*l*), an expert report must discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit.

*Id.* In making this determination, the court stressed, "the only information relevant to the inquiry is within the four corners of the document." *Id.* at 878. If the report merely sets forth the author's conclusions, or if any of the statutory requirements is omitted, then the report cannot qualify as a good faith effort. *Id.* at 879.

■ Applying this standard to the case at bar, we cannot say the trial court abused its discretion in this case when it concluded the Hogstel report did not meet the requirements of the Act. Nowhere in the report does Hogstel identify the specific standard of care for a nursing home or a hospital in the relevant factual situation. Nor does the report identify with any kind of specificity the conduct of either defendant that purportedly violated its standard of care. Finally, there is no statement identifying a causal connection between the conduct complained of and Mr. Fischer's injuries. Although the report need only be a "fair summary" of the expert's opinions, Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.10(r)(6), that summary must inform the defendant of "what care was expected, but not given." *Palacios*, 46 S.W.3d at 880. Hogstel's report does not inform the defendants in this case of the care expected of them or of the manner in which they purportedly failed to provide that care. Nor do the conclusions—or the "concerns and questions"—expressed by Hogstel allow the trial court to determine whether appellant's claims have merit. *See id.* at 879. Looking only at the four corners of the Hogstel report, as *Palacios* instructs, we find no abuse of discretion in the trial court's conclusion that the report was inadequate. We cannot determine appellant's first issue in her favor on this ground.

### *Section 13.01(g) Grace Period*

■ However, appellant's first issue includes an alternative ground. The Act, she urges, provides a claimant a second opportunity to provide a report under certain circumstances. Specifically, if the claimant fails to provide an expert report by the Act's deadline, then she is entitled to a thirty-day grace period, so long as the court finds the failure was not intentional or the result of conscious indifference but was instead the result of an accident or mistake. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(g).[3] Appellant timely re-

---

3. Section 13.01(g) provides:

(g) Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure of the claim-
ant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection. A motion by

quested relief under this subsection. The trial court denied the request, and appellant has identified that denial as error.

This Court recently addressed the circumstances under which the thirty-day grace period is available to a claimant. In *Whitworth v. Blumenthal*, 59 S.W.3d 393, 397 (Tex.App.-Dallas 2001), we concluded the claimant's proffered report was not an "expert report" as defined by the Act and was not a good faith effort to comply with the Act's requirements. However, a majority of the Court concluded further that the section 13.01(g) grace period was available to a claimant so long as she showed her failure to file an "expert report" within the time prescribed was not intentional or the result of conscious indifference, but rather was due to accident or mistake. *Id.* at 401. The *Whitworth* claimant presented testimony from her counsel that the author of the report was a well-qualified physician who had reviewed the claimant's medical records and determined she had a valid claim. The claimant's counsel also testified that this was the first time he had filed a report under the new Act, and he believed the report met its requirements. *Id.* at 401–402. The majority concluded that the claimant had sufficiently negated intentional disregard and conscious indifference, and the defendant physician had not controverted the claimant's evidence. Thus, the majority reversed the trial court's dismissal and remanded the case. *Id.* at 402–403.

The procedural history of the case at bar bears a remarkable likeness to *Whitworth*'s. In this case, as well, the claimant's counsel has provided testimony (through her verified response to the motions to dismiss) that she proffered the report under the "new Act" and that she believed the report complied with the Act's requirements. Appellees were unable to controvert counsel's statements with any evidence of intentional disregard or conscious indifference. Following the majority's reasoning in *Whitworth*, we conclude the trial court abused its discretion when it denied appellant a thirty-day grace period to bring the report into compliance with the Act. We resolve appellant's first issue in her favor on this alternative ground.

## CONSTITUTIONAL ISSUES

Because we have concluded that the Act itself provides appellant the opportunity to cure the inadequacies in the report at issue, we need not address constitutional grounds for such an opportunity. We do not reach appellant's second issue.

## CONCLUSION

Appellant failed to provide an adequate expert report within the time required by the Act. However, her failure was not intentional or the result of conscious indifference. Accordingly, she was entitled to a thirty-day grace period to cure the inadequacies of the report. Because she was denied that opportunity, we reverse the trial court's judgment and remand the case for further proceedings in accordance with this opinion.

---

a claimant for relief under this subsection shall be considered timely if it is filed before any hearing on a motion by a defendant under Subsection (e) of this section.