Candace **SANDLES**, as the Administratrix of the Estate of Sarah Ann Williams, Deceased, Appellant

v.

Gary **HOWERTON**, Appellee.

No. 05–04–01077–CV.

Court of Appeals of Texas, Dallas.

May 27, 2005.

Jay C. English, Sarah Annette Kasparian, English & Associates, P.C., Dallas, for appellant.

Brenda Neel Hight, Lance E. Caughfield, Fletcher & Springer, L.L.P., Dallas, for appellees.

Before Justices WRIGHT, FITZGERALD and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

In this medical malpractice case, we address whether the trial court abused its discretion by refusing to grant appellant a thirty-day grace period within which to file her expert report, by dismissing her claims with prejudice · pursuant to the Medical Liability and Insurance Improvement Act

of Texas [1] (the Act) and by awarding attorneys' fees against appellant as sanctions. We affirm the trial court's judgment.

## BACKGROUND

Candace Sandles, as administratrix of the estate of Sarah Ann Williams, deceased, filed this health care liability claim on March 5, 2003 alleging that Ashford Hall Nursing Home, the Lion Hospice Foundation, two doctors and Gary Howerton, a family nurse practitioner, were negligent in providing medical care for Williams, resulting in her death.[2] Williams' death allegedly resulted from a series of falls over several months at the nursing home where she was a patient.

Under article 4590i, section 13.01(d) of the Act, Sandles was required on or before September 1, 2003 to either dismiss her claims voluntarily or provide opposing counsel with an expert report showing, among other things, how each defendant physician or health care provider failed to meet an applicable standard of care.[3] Sandles furnished an expert report of registered nurse Joy Souther on September 3, 2004 to Howerton's co-defendants but did not furnish the report to Howerton on that date. It appears Howerton was not served with citation in the lawsuit until after that date because Howerton filed his answer on October 8, 2004. He received a copy of the report on December 31, 2004.

In March 2004, Howerton filed a motion to dismiss Sandles' claims against him alleging she failed to comply with the expert report requirements of article 4590i and requesting attorneys' fees under section 13.01(e).[4] In her response to the motion to dismiss, Sandles moved for an extension of time to file her expert report. At a combined hearing, the trial court denied Sandles' request for an extension and granted Howerton's motion to dismiss, but did not state the basis for its rulings.

Howerton then filed a combined motion for attorneys' fees and to sever his case

1. *See* Act of May 1, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985–86, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 864, 884 (current version at TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001–74.507 (Vernon Supp. 2004–05)) (formerly found at TEX.REV.CIV. STAT. ANN. art. 4590i (Vernon Supp.2003)). Sandles filed this lawsuit before the repeal of article 4590i therefore this case is governed by the provisions of article 4590i in effect at that time. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 23.02(d), 2003 Tex. Gen. Laws 864, 899.

2. Sandles' claims against Howerton were severed and this appeal relates only to those claims.

3. Section 13.01(d) provided "[n]ot later than the later of the 180th day after the date on which a health care liability claim is filed or the last day of any extended period established under Subsection (f) or (h) of this section, the claimant shall, for each physician or health care provider against whom a claim is asserted (1) furnish to counsel for each physician or health care provider one or more expert reports, with a curriculum vitae of each expert listed in the report; or (2) voluntarily nonsuit the action against the physician or health care provider." *See* Act of May 1, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws at 985–86 (repealed 2003).

4. Section 13.01(e) provided "[i]f a claimant has failed, for any defendant physician or health care provider, to comply with Subsection (d) of this section within the time required, the court shall, on the motion of the affected physician or health care provider, enter an order awarding as sanctions against the claimant or the claimant's attorney: (1) the reasonable attorney's fees and costs of court incurred by that defendant; (2) the forfeiture of any cost bond respecting the claimant's claim against that defendant to the extent necessary to pay the award; and (3) the dismissal of the action of the claimant against that defendant with prejudice to the claim's refiling." *See* Act of May 1, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws at 986 (repealed 2003).

from the other defendants. In response to this motion, Sandles asked the court to reconsider its dismissal and grant her a thirty-day extension to file an expert report in compliance with article 4590i section 13.01. Following the hearing, the trial court denied the motion for reconsideration and entered a final judgment in favor of Howerton granting the severance and awarding him $35,000 in attorneys' fees, court costs, and $22,500 in attorneys' fees contingent on whether appellant is unsuccessful on appeal, plus five percent post-judgment interest. Sandles timely appealed.

### DISCUSSION

Sandles raises three issues on appeal: (1) the trial court erred in dismissing her claim against Howerton without allowing her an extension to file an amended expert report, (2) the trial court erred in finding her expert's report was insufficient as a matter of law, and (3) the trial court erred in awarding attorneys' fees to Howerton. We have found no ruling in the record where the trial court held Sandles' expert report was insufficient as a matter of law. In fact, the trial court did not state the basis for its rulings.[5] In that situation, we will uphold the court's judgment on any valid legal theory supported by the record. *See City of Garland v. Booth*, 895 S.W.2d 766, 768–69 (Tex.App.-Dallas 1995, writ denied); *see also Town of Sunnyvale v. Mayhew*, 905 S.W.2d 234, 243 (Tex.App.-Dallas 1994), *rev'd on other grounds by Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922 (Tex.1998); *Dalrym-*

*ple v. Univ. of Tex. Sys.*, 949 S.W.2d 395, 400 (Tex.App.-Austin 1997), *rev'd on other grounds by Brewerton v. Dalrymple*, 997 S.W.2d 212 (Tex.1999); *Pepe Int'l Dev. Co. v. Pub Brewing Co.*, 915 S.W.2d 925, 929 (Tex.App.-Houston [1st Dist.] 1996, no pet.); *Gessmann v. Stephens*, 51 S.W.3d 329, 335 (Tex.App.-Tyler 2001, no pet.). Because a noncompliant expert report is one basis upon which the trial court could have ruled, we will address Sandles' argument.

### 1. Adequacy of the expert report

We review a trial court's determination of the adequacy of an expert report under an abuse of discretion standard. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex.2001); *Copeland v. Ayers*, 138 S.W.3d 652, 654 (Tex.App.-Dallas 2004, pet. denied); *Hansen v. Starr*, 123 S.W.3d 13, 19 (Tex.App.-Dallas 2003, pet. denied). The trial court must grant a motion to dismiss a claimant's health care liability claim unless the claimant shows she made a good faith effort to comply with the requirements of section 13.01. *Eichelberger v. St. Paul Med. Ctr.*, 99 S.W.3d 636, 638 (Tex. App.-Dallas 2003, pet. denied); *Fischer v. Tenet Hosps., Ltd.*, 106 S.W.3d 110, 115 (Tex.App.-Dallas 2002), *rev'd on other grounds by Horizon/CMS Healthcare Corp. v. Fischer*, 111 S.W.3d 67 (Tex.2003).

Article 4590i section 13.01(r)(6) defined expert report as

5. Sandles argues we should presume harm from the failure of the trial court to issue findings of fact and conclusions of law after a proper request. Although findings are helpful and appropriate in reviewing the dismissal of claims under the Act, they are not required because the dismissal under section 13.01 is a sanction, not a trial. *Mocega v. Urquhart*, 79 S.W.3d 61, 63–64 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). Additionally, "findings entered in support of a sanction dismissing a case [under section 13.01] are not binding on the reviewing court" as are findings entered in support of a judgment after a bench trial. *Strom v. Mem'l Hermann Hosp. Sys.*, 110 S.W.3d 216, 220 (Tex.App.-Houston [1st Dist.] 2003, pet. denied).

. . . a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

Act of May 1, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws at 987 (repealed 2003).

■ An expert report filed under section 13.01 must discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct she has called into question and to provide a basis for the trial court to conclude the claims have merit. *Palacios,* 46 S.W.3d at 878–79; *Eichelberger,* 99 S.W.3d at 638–39; *Fischer,* 106 S.W.3d at 116. "A report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill [the purposes of the Act]." *Palacios,* 46 S.W.3d at 879. A report that omits any of the statutory requirements is not a good faith effort to comply with the Act. *Id.*

■ We have reviewed Souther's report and conclude it is not a good faith effort to comply with the definition of an expert report. Souther's report is three and one-half pages describing Williams' mental and physical condition and incidents occurring at the nursing home over a period of several months. The report refers generally to acts that "the staff," "the nursing staff," and "the nurses" did or failed to do. Concerning the breach of the standard of care, Souther states:

> The nursing staff in their failure to recognize, address and implement the most basic precautions in protecting Mrs. Williams from falls and the resulting injuries, fell below the nursing standard of care and contributed to the acute injury of a subdural hematoma and her resulting demise.

Souther's report refers specifically to Howerton only once: "Progress Note of G. Howerton on January 29, 2001, states, 'unwitnessed fall, found on floor'." It does not inform Howerton of the care expected of him or of the manner in which he failed to provide that care. *See Fischer,* 106 S.W.3d at 116. Consequently, Souther's report is a conclusory statement that Williams should have received different treatment and was injured as a result. *See Eichelberger,* 99 S.W.3d at 639. We overrule Sandles' second issue.

### 2. Request for extension under section 13.01

■ Sandles also argues the trial court erred by not granting her a thirty-day extension to correct any deficiency in her expert's report because her failure to comply with section 13.01 was the result of an accident or mistake.[6] We review a trial court's decision not to grant a claimant a grace period to file an expert report under an abuse of discretion standard. *Walker v. Gutierrez,* 111 S.W.3d 56, 62 (Tex.2003); *Ayers,* 138 S.W.3d at 654.

■ Sandles filed three motions regarding experts but only the second motion concerns us on appeal.[7] Her second

6. Howerton's motion to dismiss also argued that Sandles failed to request the extensions timely. Sandles does not raise this issue on appeal.

7. The first was a motion for leave to designate expert witnesses and this motion addressed the deadline in the court's scheduling order, not the expert report required by section 13.01. Sandles' third request for a thirty-day grace period in which to file an amended expert report was not filed timely because it was filed nineteen days after the hearing on

motion was filed May 5, 2004 and was designated a request for extension under section 13.01(f).[8] However, Sandles argues on appeal that this motion, although designated as a subsection (f) motion, was argued also as a subsection (g) motion. Section 13.01(g) provided:

> Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection. A motion by a claimant for relief under this subsection shall be considered timely if it is filed before any hearing on a motion by a defendant under Subsection (e) of this section.

Act of May 1, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws at 986 (repealed 2003).

In the conclusion of her motion, Sandles states:

> Plaintiff did not intentionally miss the deadline for designation of expert, nor was the deadline ignored due to conscious indifference, but was missed as the result of an accident and/or a mistake. For the reasons described herein, Plaintiff respectfully requests the Court GRANT her Motion for Rule 13.01(f) Extension to File Expert Report, whereby for good cause shown after motion and hearing, the court may grant one (30) day extension to designate her expert.

■ Additionally, at the hearing on the motion, Sandles argued her failure to comply with section 13.01 was not intentional or because of conscious indifference, the standard under subsection (g). Sandles apparently confused the burdens under these two subsections. Because a motion should be governed by its substance and not merely by its title, we will construe Sandles' motion as a request for a thirty-day grace period also under subsection (g). *See Rittenhouse v. Sabine Valley Ctr. Found., Inc.*, 161 S.W.3d 157, 164 (Tex. App.-Texarkana 2005, no pet. h.) (motion for extension construed under both subsections (f) and (g) because motion, while quoting the standard for subsection (f), also alleged facts sufficient to constitute accident or mistake under subsection (g)).

■ Section 13.01(g) has been interpreted as a " 'safety valve' to prevent

---

Howerton's motion to dismiss. *See* Act of May 1, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws at 986 (repealed 2003).

**8.** Subsection (f) provided "[t]he court may, for good cause shown after motion and hearing, extend any time period specified in Subsection (d) of this section for an additional 30 days. Only one extension may be granted under this subsection." Act of May 1, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws at 986 (repealed 2003). Subsection (f) has been interpreted to give the trial court broad discretion in determining whether good cause is shown and to limit the court's ability to extend the time to file expert reports to one thirty-day period immediately following the initial 180 days, or up to 210 days from the date the health care liability claim was filed. *Landry v. Ringer*, 44 S.W.3d 271, 274 (Tex. App.-Houston [14th Dist.] 2001, no pet.); *Pfeiffer v. Jacobs*, 29 S.W.3d 193, 197 (Tex. App.-Houston [14th Dist.] 2000, pet. denied); *Roberts v. Med. City Dallas Hosp., Inc.*, 988 S.W.2d 398, 402 (Tex.App.-Texarkana 1999, pet. denied); *Estrello v. Elboar*, 965 S.W.2d 754, 758 (Tex.App.-Fort Worth 1998, no pet.). A motion for an extension under section 13.01(f) filed more than 210 days after the filing date of the claim is untimely. *Landry*, 44 S.W.3d at 274; *Pfeiffer*, 29 S.W.3d at 197; *Roberts*, 988 S.W.2d at 402. Because Sandles filed this motion over a year after she filed her claims against Howerton, it was untimely.

the forfeiture of claims through an accident or mistake that causes a party to fail to comply with subsection (d) in the first instance." *Broom v. MacMaster*, 992 S.W.2d 659, 662–63 (Tex.App.-Dallas 1999, no pet.). Courts have construed that "some excuse, though not necessarily a good one, is sufficient under subsection (g) 'to warrant an extension of time to file the expert report, so long as the act or omission causing the failure to file the report was, in fact, accidental.'" *Landry v. Ringer*, 44 S.W.3d 271, 275 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (quoting *Horsley–Layman v. Angeles*, 968 S.W.2d 533, 536 (Tex.App.-Texarkana 1998, no pet.)). "Conscious indifference requires more than negligence." *Roberts v. Med. City Dallas Hosp., Inc.*, 988 S.W.2d 398, 403 (Tex.App.-Texarkana 1999, pet. denied). In determining whether a claimant acted intentionally or with conscious indifference, we look to the claimant's knowledge and acts. *Horsley–Layman*, 968 S.W.2d at 536. In this context, an accident or mistake "is characterized by inadequate knowledge of the facts or an unexpected happening that precludes compliance" while conscious indifference is the failure to take action "'which would seem indicated to a person of reasonable sensibilities under similar circumstances.'" *Pfeiffer v. Jacobs*, 29 S.W.3d 193, 198 (Tex. App.-Houston [14th Dist.] 2000, pet. denied) (quoting *Prince v. Prince*, 912 S.W.2d 367, 370 (Tex.App.-Houston [14th Dist.] 1995, no writ)). However, when a report omits one of the required statutory elements, a mistaken belief that the report complied with section 13.01 will not negate a finding of intentional or conscious indifference. *Fischer*, 111 S.W.3d at 68; *Walker*, 111 S.W.3d at 64–65.

At the hearing, Sandles' attorney testified that he was "immanently [sic] familiar with the requirements of Section 13" which required him to produce to Howerton a report "calling into question the standard of care, making a specific criticism of the standard of care; and also, providing causation to the damages that are sought in the lawsuit." He primarily argued that Souther, as a registered nurse, was qualified to render an expert opinion concerning the standard of care and conduct of a nurse practitioner because the only distinction between the two professionals is that a nurse practitioner may write prescriptions and that Sandles' criticism of Howerton's abilities related only to "generalized nursing care." At the same hearing, Sandles' attorney also argued he did not know Howerton was a family nurse practitioner and therefore did not know the exact type of expert report to furnish.

Howerton's attorney rebutted with evidence that as early as June 2003, Sandles' attorney knew Howerton was a family nurse practitioner because, among other reasons, he was listed as such in Sandles' own responses to discovery; he wrote Sandles' attorney a letter in November 2003 advising that Howerton is a registered nurse/nurse practitioner and a clinical nurse specialist; and he wrote Sandles' attorney a letter in January 2004 advising that the expert report did not comply with section 13.01 and that Sandles' lawsuit was subject to dismissal.

The record demonstrates that Sandles' attorney knew that Howerton was a nurse practitioner prior to the deadline for furnishing the expert report. And the letter from Howerton's attorney in January 2004 attempted to warn Sandles' attorney that Souther's report did not meet the requirements of section 13.01. *See Schorp v. Baptist Mem'l Health Sys.*, 5 S.W.3d 727, 733 (Tex.App.-San Antonio 1999, no pet.). This letter was sent two months before Howerton filed his motion to dismiss, yet Sandles' attorney did not attempt to amend the report or request an extension

until after Howerton moved to dismiss Sandles' claims. Sandles' attorney knew the requirements of section 13.01 and argued that Souther's report substantially complied with those requirements. As we have already concluded, Souther's report was not a good faith effort to comply with section 13.01. Under these facts, we conclude Sandles' attorney's mistaken belief that the expert report did comply is not the result of an accident or mistake. As a result, the trial court did not abuse its discretion in denying Sandles' motion for extension. We overrule Sandles' first issue.

### 3. Attorneys' fees

Sandles argues in her third issue that the court erred in awarding attorneys' fees because the fees are unreasonable and unnecessary and because the evidence was legally and factually insufficient to support the award.

 When dismissing a claim under section 13.01(d), the trial court must enter an order awarding as sanctions against the claimant the reasonable attorneys' fees and court costs incurred by that defendant. See Act of May 1, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws at 986 (repealed 2003). We review a trial court's award of attorneys' fees under an abuse of discretion standard. See Strom v. Mem'l Hermann Hosp. Sys., 110 S.W.3d 216, 226 (Tex.App.-Houston [1st Dist.] 2003, pet. denied); see also Marquez v. Providence Mem'l Hosp., 57 S.W.3d 585, 596 (Tex.App.-El Paso 2001, pet. denied). Under an abuse of discretion standard, legal and factual insufficiency issues are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. See Doyle v. Doyle, 955 S.W.2d 478, 479 (Tex. App.-Austin 1997, no pet.); see also Wilemon v. Wilemon, 930 S.W.2d 290, 293–94

(Tex.App.-Waco 1996, no writ). We will not reverse the judgment of the trial court absent a clear abuse of discretion. Cordova v. Southwestern Bell Yellow Pages, Inc., 148 S.W.3d 441, 445–46 (Tex.App.-El Paso 2004, no pet. h.).

 Section 13.01(e) authorizes the recovery of "reasonable" attorneys' fees. See Act of May 1, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws at 986 (repealed 2003); see also Cordova, 148 S.W.3d at 446. In determining the reasonableness of an award of attorneys' fees, the court considers: (1) the time and labor involved, novelty and difficulty of the questions involved, and the skill required; (2) the likelihood that the lawyer will be precluded from accepting other employment; (3) the fee customarily charged for similar services; (4) the amount involved and results obtained; (5) time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and abilities of the lawyers performing the services; and (8) whether the fee is fixed or contingent. Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex.1997); see Marquez, 57 S.W.3d at 596; Academy Corp. v. Interior Buildout & Turnkey Constr., Inc., 21 S.W.3d 732, 741–42 (Tex. App.-Houston [14th Dist.] 2000, no pet.); Cordova, 148 S.W.3d at 448. However, evidence on each of these factors is not necessary to determine the amount of an attorneys' fee award. Hagedorn v. Tisdale, 73 S.W.3d 341, 353 (Tex.App.-Amarillo 2002, no pet.). The court may also consider the entire record and the common knowledge of the lawyers and judges. Id. The nature and extent of the services performed is typically expressed by the number of hours and the hourly rate. Hagedorn, 73 S.W.3d at 353–54; Pitts v. Dallas County Bail Bond Bd., 23 S.W.3d 407,

413–14 (Tex.App.-Amarillo 2000, pet. denied). But there is no rigid requirement that both facts must be in evidence to make a determination of attorneys' fees. *Hagedorn*, 73 S.W.3d at 354.

■ In this case, two attorneys for Howerton testified at length about the nature of the work performed and that the fees charged were reasonable. Gay Templeton testified that she was a nurse prior to becoming an attorney and that she had developed an expertise in medical malpractice cases. She testified that she analyzed and organized voluminous medical records, located medical experts and visited with them concerning the case, and prepared reports to the clients. Brenda Hight testified that she prepared the case as if it were going to trial and that the contentious nature of the case required more work than usual. Hight testified that Sandles' lawsuit included claims for wrongful death and punitive damages. She also testified to the reasonableness of attorneys' fees on appeal based on her experience in appellate matters. Sandles' attorney cross-examined each attorney on the details of the work performed.

■ Following the hearing, the court awarded Howerton $35,000 in attorneys' fees and fees contingent on appellant's unsuccessful appeal. While Howerton's attorneys offered no testimony of the actual number of hours spent by each attorney who had devoted time to it, or the total number of hours spent on the case,[9] appellant's counsel cross-examined the attorney witnesses about the reasonableness of hours spent on different types of work referenced in the bills. Based on the record, we cannot conclude the evidence is insufficient to support the award of attorneys' fees in this case. Consequently, we conclude the trial court did not abuse its discretion in its award of attorneys' fees. We overrule Sandles' third issue.

### CONCLUSION

We conclude the trial court did not abuse its discretion by denying Sandles' motions for extension to file her expert report, by dismissing her claims against Howerton with prejudice or by awarding attorneys' fees against her in favor of Howerton. We affirm the trial court's judgment.

---

9. Howerton asked the court to take judicial notice of the reasonable and customary fees in Dallas County for lawyers practicing in its court. Nothing in section 13.03(e) modifies the general rule that a party seeking attorneys' fees must present evidence of those fees. *Tibbetts v. Gagliardi*, 2 S.W.3d 659, 665 (Tex. App.-Houston [14th Dist.] 1999, pet. denied); *see also Marquez*, 57 S.W.3d at 596; *but see* TEX. CIV. PRAC. & REM.CODE ANN. §§ 38.001, .004 (Vernon 1997) (authorizing court to take judicial notice of reasonableness of attorneys' fees in actions under section 38.001). However this does not affect our analysis. Counsel for both parties referred to attorney fee bills during the hearing. We cannot tell from the record whether the trial court reviewed these bills in making its determination, but the court did have before it a summary of those bills which reflected the hours worked and hourly rates for each person working on Howerton's case.