Opinion filed September 7, 2006

















 
 
  
 
 







 
 
  
 
 




Opinion filed September 7, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00196-CV 

                                                     __________

 

       LILLION
PISASALE, INDIVIDUALLY, AND AS REPRESENTATIVE 

         OF THE
ESTATE OF ANGELO PISASALE; MICKEAL PISASALE; 

                                   AND
DEBRA GREENE, Appellants

 

                                                             V.

 

                   THE
ENSIGN GROUP, INC. AND NORTHERN OAKS 

            HEALTHCARE,
INC. D/B/A NORTHERN OAKS LIVING AND 

                               REHABILITATION CENTER, Appellees 

 



 

                                         On
Appeal from the 350th District Court

 

                                                          Taylor County,
Texas

 

                                                   Trial
Court Cause No. 7194-D

 



                                             M
E M O R A N D U M   O P I N I O N

 








This appeal arises from a medical malpractice
action filed by appellants[1]
against a nursing home.  The trial court
dismissed appellants=
lawsuit based upon its determination that their expert reports did not comply
with the requirements set out in Tex.
Rev. Civ. Stat. art. 4590i, '
13.01 (2001).[2]
Appellants attack the trial court=s
order of dismissal in two issues.  We
affirm.

                                                               Background
Facts

Angelo Pisasale was admitted as a patient of
Northern Oaks Nursing and Rehabilitation
Center[3]
on March 25, 2003, after being hospitalized at Hendrick Medical
 Center (Hendrick).  The admitting diagnoses at Northern Oaks
included diabetes, seizure disorder, anemia, severe cervical spondylosis, hyponatremia,
severe chronic obstructive pulmonary disease (COPD), neurogenic bladder,
extremity weakness, hypertension, and altered mental status.  Mr. Pisasale was readmitted to Hendrick on
April 27, 2003, as a result of developing pneumonia and a urinary tract
infection while at Northern Oaks.  He
remained hospitalized at Hendrick until May 4, 2003, whereupon he was
readmitted as a patient at Northern Oaks. 
On May 10, 2003, a staff member of Northern Oaks found Mr. Pisasale
unresponsive and not breathing.  He was
pronounced dead  a short time later.

As alleged in their pleadings, appellants filed
suit Ato
recover those damages, as provided by law, which resulted from the injuries to
ANGELO PISASALE, during the time that he was under the care of [Northern Oaks].@ 
Lillion Pisasale sought to recover medical charges and expenses as a
result of Mr. Pisasale=s  injuries and death.  All of the appellants sought damages for loss
of consortium resulting from Mr. Pisasale=s
death.  Accordingly, it appears that
appellants asserted both survival and wrongful death causes of action against
Northern Oaks.  See Tex. Civ. Prac. & Rem. Code Ann. '' 71.002, 71.021 (Vernon 1997).  

Appellants submitted two reports in an effort to
comply with the expert report requirement. 
The first report was prepared by William R. McMinn.  McMinn described his qualifications in the
report as follows: 








I am
knowledgeable of federal and state regulations that licensed nursing facilities
in Texas must follow in caring for residents
and which articulate the standards of care governing nursing facilities,
nursing facility administrators, and nurses working in nursing facilities in Texas.  I gained this experience by completing Long
Term Care Regulatory (LTCR) survey and investigation training.  Additionally, I have extensive field
experience conducting investigations and surveys in Long Term Care Facilities. 

 

McMinn stated in his curriculum vitae that he had six years of
experience as a Astate
investigator@ in the
investigation of suspicious deaths, sexual abuse, and physical abuse in nursing
homes, state schools, and intermediate care facilities.  He described his experience as a state
investigator as the equivalent of a Asexual/physical
abuse investigator in a large police department.@  McMinn=s
educational background included degrees in criminal justice from American Technological University
and various Asurveyor@ training courses for health
facilities.

McMinn began his report with a summary of the
treatment that Mr. Pisasale received during his various admissions at Northern
Oaks and Hendrick.   He then listed
several Adeficient
practices@ which he
had identified on the part of the staff of Northern Oaks with respect to
various regulations which govern long-term care facilities.  McMinn made the following accusations in his
report:

1.         The facility failed to provide the necessary care,
treatments and services to resident Angelo Pisasale.

 

2.         The facility nursing staff failed to adequately assess
resident Angelo Pisasale for signs and symptoms of pneumonia, bacterial
infection, and urinary tract infection.

 

3.         Review of the nursing shift assessments/notes revealed the
physician and/or family member was not immediately notified when resident had a
significant change in condition that had clinical complications requiring
physician intervention.

 

4.         There was insufficient numbers of nursing staff available in
the facility to provide necessary and required nursing care and services as
determined by care outcome.

 

5.         Facility staff failed to maintain clinical records for
resident Angelo Pisasale that were complete and accurate.

 

6.         The facility failed to meet requirements for Licensure and
Medicaid Certification, Quality of Care, as determined by the lack of nursing
care and services provided to resident Angelo Pisasale.

 








McMinn supported these criticisms by detailing his evaluation of
the nursing care provided to Mr. Pisasale at Northern Oaks.  He concluded that these failures Acontributed to a deterioration of [Mr.
Pisasale=s] health
that eventually required hospitalization.@

Appellants also submitted the report of Dr. Melvin
L. Butler, M.D.  Dr. Butler stated that
he is board certified in internal medicine and gastroenterology and that he
currently serves as the medical director of a nursing facility in Knoxville, Tennessee.  Dr. Butler also began his report with a
chronology of Mr. Pisasale=s
stay at Northern Oaks.  Among other
things, Dr. Butler noted that Mr. Pisasale yelled frequently and that he
refused to eat food prepared at Northern Oaks. 
Dr. Butler alleged that the staff of Northern Oaks failed to timely
inform Mr. Pisasale=s
physician or family members when he experienced a significant change in
condition.

In its motion to dismiss, Northern Oaks challenged
McMinn=s
qualifications to render opinions on nursing care.  It also alleged that McMinn=s and Dr. Butler=s
reports did not sufficiently set out a causal relationship between Northern Oak=s acts and omissions and Mr. Pisasale=s death.  Northern Oaks also asserted that Dr. Butler=s statements regarding causation were
conclusory.  In responding to Northern
Oak=s motion to dismiss, appellants
requested a 30-day extension to file additional expert reports under Article
4590i, section13.01(g) in the event the trial court determined that their
reports were inadequate.  In support of
their request for an extension, appellants=
counsel testified that he believed the reports were sufficient and that, in the
event he was mistaken, it was not due to conscious indifference on his
part.  The trial court subsequently
granted Northern Oaks=
motion to dismiss and denied appellants=
request for an extension under Article 4590i, section 13.01(g).  

                                                                         Issues

In two issues, appellants contend that their
expert report satisfies the requirements of Article 4590i, section 13.01 or,
alternatively, that the trial court abused its discretion by denying their
request for a thirty‑day grace period to amend their report under Article
4590i, section13.01(g).

Standard of Review








A trial court=s
decision to dismiss a lawsuit because of an inadequate expert report is
reviewed under an abuse of discretion standard. 
Am. Transitional Care Ctrs. of Tex.,
Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001). A trial court=s decision to grant or deny an Article
4590i, section 13.01(g) grace period is also reviewed under an abuse of
discretion standard. Walker v.
Gutierrez, 111 S.W.3d 56, 62 (Tex.
2003).  A trial court abuses its
discretion if it acts in an arbitrary or unreasonable manner without reference
to any guiding rules or principles. Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241‑42 (Tex.
1985). A reviewing court is not allowed to substitute its judgment for that of
the trial court when reviewing a discretionary decision. Flores v. Fourth
Court of Appeals, 777 S.W.2d 38, 41‑42 (Tex. 1989). The mere fact that a trial court
may decide a matter within its discretionary authority in a different manner
than an appellate court in a similar circumstance does not demonstrate that an
abuse of discretion has occurred. Downer, 701 S.W.2d at 241‑42.

                                             Sufficiency
of Appellants=
Expert Reports

In Palacios, 46 S.W.3d at 878‑79, the
Texas Supreme Court outlined the following criteria for evaluating the
sufficiency of expert reports:  

[T]he
expert report must represent only a good‑faith effort to provide a fair
summary of the expert=s
opinions. A report need not marshal all the plaintiff=s
proof, but it must include the expert=s
opinion on each of the elements identified in the statute. In setting out the
expert=s
opinions on each of those elements, the report must provide enough information
to fulfill two purposes if it is to constitute a good‑faith effort. First,
the report must inform the defendant of the specific conduct the plaintiff has
called into question. Second, and equally important, the report must provide a
basis for the trial court to conclude that the claims have merit.  

 

A report that merely states the expert=s conclusions about the standard of
care, breach, and causation does not fulfill these two purposes. Nor can a
report meet these purposes and thus constitute a good‑faith effort if it
omits any of the statutory requirements. However, to avoid dismissal, a
plaintiff need not present evidence in the report as if it were actually
litigating the merits. The report can be informal in that the information in
the report does not have to meet the same requirements as the evidence offered
in a summary‑judgment proceeding or at trial. (citations omitted)

 








As noted previously, Northern Oaks alleged three
grounds in seeking the dismissal of appellants=
claims.  These allegations included: (1)
McMinn=s lack of
qualifications to render an opinion on nursing care; (2) the failure of the
reports to link Northern Oaks=s
acts and omissions to Mr. Pisasale=s
death; and (3) the conclusory nature of Dr. Butler=s
report with respect to causation.  We
conclude that the questions concerning McMinn=s
qualifications and the sufficiency of Dr. Butler=s
report are interrelated and dispositive of appellants=
first issue.[4]  

In a suit against a Anonphysician
health-care provider,@
the report must be given by Aan
expert who has knowledge of accepted standards of care for the diagnosis, care,
or treatment of the illness, injury, or condition involved in the claim.@ See Article 4590i, section
13.01(r)(5)(B).  This standard has no
express or implied requirement that the expert be a physician as is the case in
a suit against a physician.  See id.
' 13.01(r)(5)(A).  The bulk of McMinn=s
report consists of his detailed critique of the nursing care provided to Mr.
Pisasale.  While McMinn perhaps has
knowledge of the federal and state regulations pertaining to nursing homes,
neither his report nor his curriculum vitae indicate that he has any training,
certification, or experience working as a nurse or other kind of a health-care
provider.  Even if McMinn were a registered
nurse, he would not be qualified to render an opinion as to causation because
nurses are prohibited from acts of medical diagnosis.  See Costello v. Christus Santa Rosa
Health Care Corp., 141 S.W.3d 245, 248 (Tex. App.CSan
Antonio 2004, no pet.) (quoting Tex.
Occ. Code  Ann. '
301.002(2) (Vernon
Supp. 2006).  Accordingly, appellants= compliance with the expert report
requirement is dependent upon the manner in which Dr. Butler addressed
causation in his report.

To avoid being conclusory, the expert must explain
the basis of his statements to link conclusions to facts.  Bowie
Mem=l Hosp.
v. Wright, 79 S.W.3d 48, 52 (Tex. 2002)
(quoting Earle v. Ratliff, 998 S.W.2d 882, 890 (Tex. 1999)). 
It is not enough that the expert report Aprovided
insight@ about
the plaintiff=s claims.
Id. at
52. Nor may liability in a medical malpractice suit be made to turn upon
speculation or conjecture.  See Hutchinson v. Montemayor, 144 S.W.3d 614, 618 (Tex. App.CSan Antonio 2004, no pet.). 

Dr. Butler=s
report concluded with a section labeled: ATHE
CAUSAL RELATIONSHIP BETWEEN THE FAILURE OF NORTHERN OAKS NURSING CENTER TO MEET
THE STANDARD OF CARE AND THE INJURIES SUFFERED BY MR. PISASALE. @ (emphasis in original)  He completed this section with the following
statement:  

As
a result of the failure to meet the standard of care by the nursing staff at
Northern Oaks Mr. Pisasale suffered pain and required hospitalization.  I think their negligence was a proximate
cause of the deterioration and suffering sustained by Mr. Pisasale. 








 

Dr. Butler=s
statement regarding causation, particularly the last sentence, is speculative
in nature wherein he states, AI
think their negligence was a proximate cause.@
(emphasis added)  Furthermore, Dr. Butler=s chronology of Mr. Pisasale=s medical history indicates that Mr.
Pisasale was quite ill at the time he was admitted as a patient at Northern
Oaks.  However, Dr. Butler made no effort
to eliminate Mr. Pisasale=s
preexisting conditions as the cause for the injuries described in his report
which he attributes to Northern Oaks.  
Based upon our review of Dr. Butler=s
report, we conclude that the trial court could have reasonably determined that
the report did not represent a good‑faith effort to summarize the causal
relationship between Northern Oaks=s
nursing staff=s alleged
failure to meet the applicable standards of care and Mr. Pisasale=s alleged injuries.  Appellants=
first issue is overruled. 

    Were Appellants Entitled To A Thirty‑Day
Extension To Amend Their Report?

Article 4590i, section
13.01(d) required claimants to furnish an expert report within 180 days after
the claim was filed.  Article 4590i,
section 13.01(g) gave trial courts the discretion to provide a thirty‑day
grace period to file an amended report if the failure to timely file an
adequate report Awas not
intentional or the result of conscious indifference but was the result of an
accident or mistake.@

The Texas Supreme Court faced a similar
situation in Walker,
111 S.W.3d 56.  There, as here, claimant=s counsel mistakenly believed that his
expert=s report
was sufficient. The supreme court concluded that counsel=s
belief that his expert=s
report was sufficient, despite clear statutory requirement to the contrary, Adoes not establish a >sufficient excuse= necessary to support a finding that a
party made a mistake of law.@
Id. at
64‑65. This follows because a medical malpractice claimant is charged
with knowledge of Article 4590i, section 13.01 and its requirements. Id. 








Appellants attempt to distinguish Walker by alleging it involved a
report which completely omitted a required element.  Appellants contend that, if their reports are
inadequate, it is not because of the complete absence of a critical element but
rather an incomplete statement of a required element.  We do not believe that the distinction
between an omitted element versus an incomplete element necessarily avoids the
application of Walker.  It is the substance of the opinions in
question, not the technical words used, that determines whether a report
complies with statutory mandates.  In
re Brown, 190 S.W.3d 4, 7 (Tex. App.CAmarillo
2005, orig. proceeding).  One can
reasonably conclude that merely inserting the words Aproximate
cause@ or Acausal relationship@ in a report, coupled with only a
conclusory or  speculative statement of
the expert=s opinion
regarding causation, results in an element being omitted from the report.  See Id.

The cases decided since Walker indicate
that the trial court=s
decisions to grant or deny a thirty‑day grace period when counsel argues
that his mistaken belief that a report was sufficient constitutes a mistake of
law are afforded great deference due to their individual factual patterns. Compare
In re Zimmerman, 148 S.W.3d 214, 217 (Tex. App.CTexarkana
2004, orig. proceeding) (affirming the trial court=s
decision to grant a thirty‑day grace period based upon mistake of law) with
Sandles v. Howerton, 163 S.W.3d 829, 838 (Tex. App.CDallas
2005, no pet.) (affirming the trial court=s
decision to not grant a thirty‑day grace period based upon a mistake of
law).  We cannot say that the trial court
abused its discretion when it denied appellants=
request for a thirty‑day grace period. 
Appellants= second
issue is overruled.

                                                               This
Court=s Ruling

The trial court=s
order of dismissal is affirmed.

 

TERRY McCALL

JUSTICE

 

September 7, 2006

Panel
consists of: Wright, C.J., and

McCall,
J., and Strange, J.











[1]Appellants consist of: 
Lillion Pisasale, Individually, and as Representative of the Estate of
Angelo Pisasale; Mickeal Pisasale; and Debra Greene.  Lillion Pisasale is the surviving spouse of
Angelo Pisasale.  Mickeal Pisasale and
Debra Greene are surviving children of Angelo Pisasale.





[2]Although applicable to this case, Article 4590i was
repealed effective September 1, 2003. 
The subject matter is now governed by Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351 (Vernon Supp.2006).





[3]There is some confusion regarding the identity of
appellees in this appeal.  A brief was
filed by ANorthern Oaks Healthcare, Inc. d/b/a Northern Oaks
Living and Rehabilitation Center@ with a notation that it was incorrectly sued as AThe Ensign Group, Inc. d/b/a Northern Oaks Nursing and Rehabilitation Center.@  The trial court=s order
of dismissal identifies the defendants in the trial court as follows:  AThe
Ensign Group, Inc. and Northern Oaks Healthcare, Inc. d/b/a Northern Oaks
Living and Rehabilitation
 Center.@  Pursuant to our
customary practice, we have identified appellees in the same manner as they are
listed in the dispositive judgment or order. 
We will collectively refer to appellees as ANorthern Oaks.@  





[4]Northern Oaks contends that appellants= expert reports do not address the causal relationship
between the act or omissions of its staff and Mr. Pisasale=s death to support appellants= wrongful death claim. 
We do not reach this contention based upon our determination that the
reports do not sufficiently address causation to support any cause of
action against Northern Oaks.