

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-25-00074-CV

**IN THE INTEREST OF S.P.A.T.,** a Child

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CI15371
Honorable Laura Salinas, Judge Presiding

Opinion by:    H. Todd McCray, Justice

Sitting:    Irene Rios, Justice
H. Todd McCray, Justice
Velia J. Meza, Justice

Delivered and Filed: September 10, 2025

AFFIRMED AS MODIFIED

Appellant Father appeals the trial court's order terminating his parental rights to his child, S.P.A.T.[1]  In his first three issues, Father challenges the sufficiency of the evidence supporting termination of his parental rights based on statutory grounds (D), (E), and (F) in subsection 161.001(b)(1) of the Texas Family Code. In his fourth issue, Father challenges the sufficiency of the evidence supporting the trial court's finding that termination was in S.P.A.T.'s best interest. Father also challenges the award of attorney's fees for the underlying matter and the unconditional

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the parents as "Father" and "Mother" and we refer to children using their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).  We also refer to S.P.A.T. as "the child."

award of attorney fees for any appeal by Father. We modify the trial court's order to strike the statutory ground (D) finding, affirm the termination order as modified, and affirm the fee awards.

## BACKGROUND

Father and Mother were divorced on November 8, 2019.[2] In the divorce decree, Mother was named as S.P.A.T.'s sole managing conservator and Father was named a possessory conservator. The decree included a finding that there was "a high risk of the international abduction of [child] by [Father]," and included the following measures—provided for under section 153.503 of the Texas Family Code—for the protection of S.P.A.T.:[3]

- [Father]'s visitation [b]e supervised by a visitation center or independent organization. . .

- [Father] is enjoined from: (A) acting from or causing, soliciting, or hiring a third person from removing the child from Bexar County, Texas; (B) possessing any passport issued in the child's name, including any passport issued in the name of both the parent and the child, and, (C) applying on the behalf of the child for a new or replacement passport or international travel visa for the child;

- [Mother] as sole managing conservator shall have the following exclusive right to apply for a passport for the child,

- [Father] shall not obtain, apply, or in any way acquired [sic] a passport for the child, [S.P.A.T.] from any country or jurisdiction.

- [Father] shall not have, under any circumstances, possession of the child's, [S.P.A.T.], passport.

- [Father] shall not have possession of any passports of the child's, [S.P.A.T.] or any documents that may facilitate travel [sic] [Father] to travel with the child, [S.P.A.T.] within the Continental United States of America or to any country, territory, or place outside the Continental United States of America.

---

[2] The divorce decree was amended on February 21, 2020, for the sole purpose of modifying the start date for child support.
[3] Many of these restrictions were already in place as a result of a temporary restraining order entered on August 15, 2018, and an additional order entered on August 28, 2018.

Despite these court ordered restrictions, in March 2022, it was discovered that Father possessed Belgian passports for himself and S.P.A.T.—each using fake names.[4] Also discovered at this time were documents purporting to be letters from Mother authorizing S.P.A.T. to travel with Father overseas. Mother testified that she had not signed either letter. She also testified that, in earlier court proceedings, Lisa Faulk, who had notarized the letters, admitted to the court that she did not witness Mother sign either document, but notarized them on the basis of representations made by Father. Notably, these documents were discovered in Dallas, Texas shortly after Father had filed motions seeking permission to take S.P.A.T. to Dallas for spring break.

On June 2, 2022, the trial court ordered Father to post a cash bond of $150,000 under section 153.503(6) or the Texas Family Code (to offset the cost of recovering S.P.A.T. if she was abducted) after finding that "[Father] has taken specific steps to enable him to travel with the child subject to this suit out of the country," and "that [Father] has obtained multiple passports for himself and the child subject to this suit, some of which contain false information."

On May 27, 2020, Father filed a petition to modify parent-child relationship, which included a request to lift the supervision provisions of the divorce decree. On July 24, 2023, Mother filed a counter motion for modification, requesting termination of Father's parental rights. On February 8, 2024, Father was arrested and was found to be in possession of an Italian passport for S.P.A.T.—issued under a fake name.

A bench trial on Father's motion to modify and Mother's counter motion began on August 27, 2024, and concluded on September 4, 2024.[5] At trial, Mother's primary evidence to support termination under subsections (D) and (E), was Father's criminal activity, and evidence that Father

---

[4] The passports had been issued on September 23, 2019, in violation of the orders entered on August 28, 2018.

[5] Father withdrew his motion to modify on August 28, 2024.

had taken steps to abduct S.P.A.T. and remove S.P.A.T. from this country.

Mother testified that, in recent years, Father had defrauded multiple people in San Antonio for over $2.3 million. Mother also testified that Father plead guilty to this activity, and the plea agreement was admitted as evidence. In the plea, Father agrees to pay "full restitution to the victims of his criminal activity in this case in the amount of $2,350,131." Two additional witnesses—Sheila Momone and Humberto Villarreal—testified as to how they were personally defrauded by Father.

Mother and other witnesses testified that Father had threatened to abduct S.P.A.T. and take her to another country and evidence was produced—including the multiple fake passports and travel documents—showing Father had taken steps towards that end.[6]

On January 15, 2025, the trial court signed an order terminating Father's parental rights to S.P.A.T.. The trial court terminated Father's parental rights based on statutory grounds (D), (E), and (F) in subsection 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E), (F). The trial court also found it was in S.P.A.T.'s best interest to terminate Father's parental rights. *See id.* § 161.001(b)(2). Father appeals.

## STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child.

---

[6] Mother testified that Father had threatened many times to take S.P.A.T. overseas. Linda Spain, who worked in Father's office for a short time, testified that Father repeatedly threatened to abduct his daughter and told her "face to face . . . no less than three times, that he could call his parents at any point and they would send a private jet" and that if his attorney did not hurry with getting him unsupervised custody "he was just going to take his daughter." Spain had previously shared this, and other information, in a letter to the Honorable Michael Parker, who was presiding over Father's bankruptcy proceedings in the United States Bankruptcy Court for the Western District of Texas. That letter was also admitted into evidence.

TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re*

*M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at \*2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.) (citations omitted).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *In re J.F.-G.*, 627 S.W.3d 304, 312, 317 (Tex. 2021). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's factual determinations and judgment regarding credibility. *J.F.-G.*, 627 S.W.3d at 312; *see also In re R.R.A.*, 687 S.W.3d 269, 279 n.50 (Tex. 2024) ("Reviewing courts, however, must defer to the factfinder's judgment as to the credibility of the witnesses and the weight to give their testimony, including reasonable and logical inferences from the evidence.").

### STATUTORY GROUNDS FOR TERMINATION

*Termination under subsection 161.001(b)(1)(D) and (E)*

In his first two issues, Father argues there is insufficient evidence to support the trial court's termination of his parental rights based on statutory grounds (D) and (E) under subsection 161.001(b)(1) of the Texas Family Code.

Only one predicate ground finding under section 161.001(b)(1) is necessary to support a termination judgment when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). However, because findings under either subsections 161.001(b)(1)(D) or (E) have consequences for termination of parental rights as to other children, termination on these grounds implicate significant due process concerns for parents. TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (M); *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019) (per

curiam). Therefore, when challenged on appeal, due process requires us to review the trial court's findings under subsections 161.001(b)(1)(D) and (E) of the Texas Family Code. *See N.G.*, 577 S.W.3d at 235–36; *R.R.A.*, 687 S.W.3d at 279 ("Although termination under (P) is sufficient to reverse the judgment of the court of appeals, we must also review termination under subsections (D) and (E) because a finding of termination under those grounds may justify termination of parental rights to other children in subsection (M)."); *In re J.W.*, 645 S.W.3d 726, 748 (Tex. 2022) ("[W]e may not bypass Father's evidentiary challenges to [s]ubsections (D) and (E) . . . because termination of a parent's rights under either can serve as a ground for termination of his rights to *another* child.").

Here, the trial court found sufficient evidence to support termination of Father's parental rights under subsections (D) and (E). Though both subsections (D) and (E) focus on endangerment, they differ regarding the source and proof of endangerment. *In re A.B.R.*, No. 04-19-00631-CV, 2020 WL 1159043, at *2 (Tex. App.—San Antonio Mar. 11, 2020, pet. denied) (mem. op.). Subsection (D) concerns the child's living environment, rather than the conduct of the parent, though parental conduct is certainly relevant to the child's environment. *In re J.A.D.*, No. 04-24-00292-CV, 2024 WL 4499195, at *4 (Tex. App.—San Antonio Oct. 16, 2024, no pet.) (mem. op.). Under subsection (E), the cause of the endangerment must be the parent's conduct and must be the result of a conscious course of conduct rather than a single act or omission. *Id.*

***Statutory Subsection D***

Subsection (D) allows for termination of parental rights if the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" TEX. FAM. CODE ANN. § 161.001(b)(1)(D). To endanger a child under subsection (D) means to expose the child to loss or injury or to jeopardize the child's emotional or physical health. *See J.W.*, 645 S.W.3d at 748; *In re S.R.*, 452 S.W.3d 351, 360 (Tex.

App.—Houston [14th Dist.] 2014, pet. denied). "Although endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it does not require that there be conduct directed at the child or that the child actually suffer injury." *J.W.*, 645 S.W.3d at 748 (internal quotation marks and alterations omitted).

Subsection (D) concerns the child's living environment, rather than the conduct of the parent, though parental conduct is certainly relevant to the child's environment. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Under Subsection (D), the trial court examines "evidence related to the environment of the child[] to determine if the environment was the source of endangerment to the [child's] physical or emotional well-being." *J.T.G.*, 121 S.W.3d at 125. The child's "environment" encompasses the suitability of the child's living conditions and the conduct of parents or others in the home. *S.R.*, 452 S.W.3d at 360. "Inappropriate, abusive, or unlawful conduct by a parent or other persons who live in the child's home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection D." *In re A.L.S.*, 660 S.W.3d 257, 271 (Tex. App.—San Antonio 2022, pet. denied) (alteration omitted). "[A] parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *In re R.S.-T.*, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.). Subsection (D) permits termination based upon only a single act or omission. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied). The time period relevant to a review of conduct and environment under statutory ground (D) is prior to the child's removal. *In re J.R.*, 171 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

### Statutory Subsection E

Subsection (E) permits termination if the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional

well-being of the child[.]" TEX. FAM. CODE ANN. § 161.001(b)(1)(E). The trial court must determine "whether evidence exists that the endangerment of the child's physical well-being was the direct result of [the parent's] conduct, including acts, omissions, or failures to act." *In re M.E.-M.N.*, 342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied). "Courts may further consider parental conduct that did not occur in the child's presence, including conduct before the child's birth or after he was removed from a parent's care." *A.B.R.*, 2020 WL 1159043, at *3. "[E]ndangering conduct is not limited to actions directed towards the child." *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *Id.*, at 345 n.4 (citation omitted); *see also In re D.F.S.*, No. 04-20-00441-CV, 2021 WL 603364, at *4 (Tex. App.—San Antonio Feb. 17, 2021, pet denied) (mem. op.) (same).

### *Facts and analysis*

Here, the evidence supports the trial court's termination of Father's parental rights under statutory ground (E) but does not support termination under statutory ground (D).[7]

At trial, there was testimony and evidence—including Father's signed plea bargain—that Father had engaged in criminal activity for years and was facing multiple years in prison as a result of that activity. This evidence alone is sufficient to support termination under statutory ground (E). *See In re S.F.*, 32 S.W.3d 318, 322 (Tex. App.—San Antonio 2000, no pet.) (finding that criminal behavior and incarceration may demonstrate parent has engaged in course of conduct detrimental to a child); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("Father also pleaded guilty to two drug charges and to being

---

[7] Having determined the evidence is legally and factually sufficient to support the trial court's findings under subsection (E), we need not consider Father's challenge to the sufficiency of the evidence to support the other predicate finding under subsection (F). *See In re D.J.H.*, 381 S.W.3d 606, 611-12 (Tex. App.—San Antonio 2012, no pet.) (along with a best-interest finding, only one predicate violation under section 161.001(b)(1) is necessary to support a termination decree).

a felon in possession of a weapon. Routinely subjecting a child to the probability he will be left alone because his parent is in jail endangers the child's physical and emotional well-being.").

Evidence was also produced showing that Father showed a flagrant disregard for the trial court's orders (dating back to 2018), as he continued to obtain false passports and travel documents for himself and S.P.A.T. while concurrently threatening to abduct S.P.A.T. and take her overseas. Such an abduction would endanger S.P.A.T. by, at the very least, separating her from Mother and a stable homelife. *See J.O.A.*, 283 S.W.3d at 345 n.4 ("[C]onduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child."); *In re J.C.*, 346 S.W.3d 189, 194–95 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("We recognize that safety, security, and stability are factors critical to child welfare, and depending on the circumstances of each case, the danger from uprooting a child may rise to the level of significantly impairing the child's emotional development. Significant impairment has been inferred from uprooting a child from a nonparental caretaker when the removal would be "devastating" or akin to "psychological amputation" or cause "serious psychological damage.") (citing *In re Rodriguez,* 940 S.W.2d 265, 273 (Tex. App.-San Antonio 1997, writ denied).

Accordingly, evidence of Father's conduct—repeatedly obtaining falsified travel documents—further supports termination under statutory ground (E). *See R.R.A.*, 687 S.W.3d at 277 ("A factfinder may infer endangerment from 'a course of conduct' that presents substantial risks to the child's physical or emotional well-being—the focus of grounds (D) and (E) . . . . Those risks can be developed by circumstances arising from and surrounding a parent's behavior."); *In re R.D.*, 955 S.W.2d 364, 368 (Tex. App.—San Antonio 1997, pet. denied) ("[T]he endangering parental conduct need not . . . have caused an actual injury to the child, and it need not even constitute an "actual or concrete" threat of injury to the child. Instead, subsection E is satisfied simply by showing a parental course of conduct endangered the child's physical or emotional well-

being.") (citations omitted). *In re K.D.H.*, No. 14-17-00832-CV, 2018 WL 1720953, at *7 (Tex. App.—Houston [14th Dist.] Apr. 10, 2018, pet. denied) (mem. op.) ("The fact finder may infer from past conduct endangering the child's well-being that similar conduct will recur.").

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that Father engaged in conduct . . . which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Therefore, we hold the evidence is legally and factually sufficient to support the trial court's termination of Father's parental rights under subsection (E).

However, this same evidence does not support termination under statutory ground (D), as it does not demonstrate Father "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Neither this evidence, nor any other evidence produced at trial, was sufficient to demonstrate Father's conduct was creating an environment that endangered the physical and emotional well-being of S.P.A.T.. We conclude the record evidence, even when viewed in the light most favorable to the judgment, would not allow a reasonable factfinder to form a firm belief or conviction that Father knowingly placed or knowingly allowed S.P.A.T. to remain in conditions that endangered his physical or emotional well-being. *See In re I.R.M.*, No. 04-21-00278-CV, 2021 WL 6053733, at *3 (Tex. App.—San Antonio Dec. 22, 2021, no pet.).

Therefore, we hold the evidence is not sufficient to support the trial court's termination of Father's parental rights under subsection (D).

**BEST INTEREST**

Father argues the evidence is legally and factually insufficient to support a finding that termination of his parental rights is in S.P.A.T.'s best interest.

When considering the best interest of a child, we consider the *Holley* factors.[8] *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.*

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *Id.*, at 28 (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

*Analysis*

The evidence of Father's endangerment of S.P.A.T. discussed above is relevant to multiple *Holley* factors, including S.P.A.T.'s emotional needs in the future and the emotional danger to

---

[8] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

S.P.A.T. in the future.

As mentioned in the statutory grounds section, there is uncontroverted evidence that Father engaged in criminal fraud for the last several years of S.P.A.T.'s life, and that Father has repeatedly violated court orders to obtain false travel documents for S.P.A.T. and himself. As addressed above, both courses of conduct endanger the physical or emotional well-being of S.P.A.T. *See In re G.V.S.*, No. 04-18-00563-CV, 2018 WL 6624398, at *4 (Tex. App.—San Antonio Dec. 19, 2018, pet. denied) (mem. op.) ("A parent's criminal activities and history are also relevant to a best interest analysis—specifically to the emotional and physical danger to the child."). "[R]outinely subjecting a child to the probability that [the child] will be left alone because [the child's] parent is in jail endangers the child's physical and emotional well-being." *In re R.M.H.*, No. 04-23-00765-CV, 2023 WL 8103188, at *4 (Tex. App.—San Antonio Nov. 22, 2023, no pet.) (mem. op.).

Accordingly, we conclude the evidence is legally and factually sufficient to support the trial court's best-interest finding.

**ATTORNEY'S FEES**

Finally, Father raises several arguments against the attorney's fees awarded by the trial court. First, Father asserts that fees for Mother's counsel and child's attorney ad litem did not provide sufficient evidence as to the reasonableness of the fees requested.

Evidence must support any award of attorney's fees. *Diaz v. Diaz*, 350 S.W.3d 251, 257 (Tex. App.—San Antonio 2011, pet. denied); *see also Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991) (noting "the trial court may award those fees that are 'reasonable and necessary' for the prosecution of the suit"). "To support an award of reasonable attorney's fees, there should be evidence of the time spent by the attorney on the case, the nature of the preparation, the complexity of the case, the experience of the attorney, and the prevailing hourly rates." *In re*

*M.A.N.M.*, 231 S.W.3d 562, 567 (Tex. App.—Dallas 2007, no pet.). "However, 'evidence on each of these factors is not necessary to determine the amount of an attorney's fee award.'" *Id.* (quoting *Sandles v. Howerton*, 163 S.W.3d 829, 838 (Tex. App.—Dallas 2005, no pet.). "The court may also consider the entire record and the common knowledge of the lawyers and judges." *Rust v. Rust*, No. 04-17-00674-CV, 2018 WL 4760157, at *7 (Tex. App.—San Antonio Oct. 3, 2018, no pet.) (mem. op.).

***Evidence supports the fees awarded to S.P.A.T.'s attorney ad litem.***

The attorney ad litem for S.P.A.T., Irene Vela Cadena, provided sworn testimony that she had served as the attorney ad litem for just over one year, that she has over thirty (30) years of experience in the area of protection of children, including termination and adoption proceedings, and that she has practiced almost exclusively in Bexar County. Cadena also testified that her hourly rate is $250, but that she was only seeking $200 per hour for this matter, and that she was only billing for six of the seven days of trial.

Father asserts this is not sufficient evidence because Cadena provided no testimony or any exhibit detailing what services Cadena performed. We disagree.

First, we find it reasonable for Cadena to be present and bill for representing S.P.A.T.'s interests throughout the trial, given that the Family Code requires the attorney ad litem to "participate in the conduct of the litigation to the same extent as an attorney for a party." *See* TEX. FAM. CODE. § 107.003(a)(1)(F). Additionally, [c]ontemporaneous billing records are not required to prove that the requested fees are reasonable and necessary." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 502 (Tex. 2019). This is particularly true when an attorney provides testimony of unbilled trial work "because it concerns contemporaneous or immediately completed work for which she had not had time to bill, or presumably even record, in her billing system." *City of Laredo v. Montano*, 414 S.W.3d 731, 737 (Tex. 2013) (per curiam). Accordingly,

we conclude there was sufficient evidence to support the trial court's award of $9,600 in attorney's fees to Cadena.

### *Evidence supports award of Mother's attorney's fees.*

Mother's attorney, Miguel Ortiz, provided sworn testimony that his main practice is in San Antonio and that he primarily practices family law. Ortiz testified that his rate for this matter was $350 per hour, and that this was customary for an attorney with his experience. He also testified about the number of hours worked on this case, the complexity of the case, and noted that additional work was required given that Father had changed attorneys twenty times. Ortiz also testified that his staff billed at $150 an hour and provided examples of other costs accrued during the case. Like Cadena, Ortiz also testified about unbilled, contemporaneous fees relating to the trial.

Finally, Ortiz presented an actual bill for his fees and costs as an exhibit.[9] Father did not raise any challenge to the reasonableness of the rates or the calculations of fees—except to assert that the amount of the bill should be reduced to account for previous motion practice where fees had been denied.

> And I would ask that he adjust his bill to see to it that $350 -- 350 hours he's asking for not include fees that he's already been denied. *Anything accrued since that time I have no problem with . . . .*

However, after reviewing a prior order, Father's counsel admitted that attorney's fees had not been expressly denied, withdrew her sole challenge to the bill, and chose not to cross-examine Ortiz.

---

[9] The admission of the bill presented by Ortiz was not objected to, but it is not included as an exhibit to the reporter's record. Father, as the appealing party, bears the burden of setting forth an appropriate record for our review of his points of error on appeal. *See Gibbons & Bravos Surveying L.L.C. v. Gibbons*, No. 04-24-00249-CV, 2025 WL 2326062, at *7 n.13 (Tex. App.—San Antonio Aug. 13, 2025, no pet. h.) ("Because the evidence does not include those invoices, we must assume the evidence supports the trial court's findings and its judgment and affirm the trial court's judgment on this point of error.") (citing *See Enter. Leasing Co. of Houston v. Barrios*, 156 S.W.3d 547, 549-50 (Tex. 2004)). Accordingly, we assume the bill supports the trial court's determination that Ortiz's fees were reasonable.

Accordingly, even if we assume the trial court did not consider the bill presented by Ortiz, Father's acceptance of the reasonableness of the amount billed, coupled with the failure to object to any aspect of Ortiz's expert testimony on fees or his proffered bill, means that Father has waived any argument that the evidence at trial was insufficient to demonstrate the reasonableness of the attorney's fees or to challenge how the fees were calculated.[10] Further, even if the issue had been preserved, the failure to cross examine Ortiz or present any controverting evidence, means there was some evidence to support the fees award.[11] Accordingly, we conclude there was sufficient evidence to support the trial court's award to Mother of $109,100 for attorney's fees and $8,126.41 for expenses and costs.

***Evidence supports award of appellate attorney's fees.***

An award of appellate attorney's fees may be appropriate to preserve and protect the safety and welfare of the child when, as here, the recipient of appellate attorney's fees "has primary responsibility of the children and for the care and upkeep of and the debt on the children's principal

---

[10] *See Dias v. Dias*, No. 13-12-00685-CV, 2014 WL 6679525, at *10 (Tex. App.—Corpus Christi–Edinburg Nov. 25, 2014, pet. denied) (mem. op.) ("Because Linus did not object to Ritika's method for calculating attorney's fees, the issue is not preserved for our review."); *Tex. Dept. of Criminal Justice v. King*, No. 10–01–058–CV, 2003 WL 22937252, at *5 (Tex. App.—Waco Dec. 10, 2003, pet. denied) (mem. op.) ("TDCJ had no objection to King's attorney's fee rate or calculation of the number of hours for the entire case. It cannot now complain that the trial court erred in using uncontested factors to calculate attorney's fees. TDCJ has not preserved this issue.").

[11] *See Dias*, 2014 WL 6679525, at *10 ("[E]ven if the issue had been preserved, given that Ritika's attorney explained the exact number of hours she worked, the rate she charged, and the specific work that she performed and that Linus failed to cross-examine the attorney regarding her fees or to object to the calculation, we find that there was some evidence supporting the reasonableness of attorney's fees sufficient to justify the award.") (citing *Montano,* 414 S.W.3d at 737). *See Yowell v. Granite Operating Co.*, 557 S.W.3d 794, 808–09 (Tex. App.—Amarillo 2018), *aff'd in part, rev'd in part*, 620 S.W.3d 335 (Tex. 2020) [*hereinafter* Yowell I] ("Granite/Apache did not cross-examine the witness regarding his estimates for attorneys' fees on appeal, present any additional evidence on the issue of appellate attorneys' fees, or otherwise contest his testimony on what a reasonable fee would be in the appeal of this case. 'A trial court, sitting as finder of fact, may award attorney's fees as a matter of law based upon an interested witness' testimony if it is accurate, clear, direct, and positive, and not contradicted by any other witness, other evidence, or attendant circumstances[.]'") (quoting *French v. Moore*, 169 S.W.3d 1, 15 (Tex. App.—Houston [1st Dist.] 2004, no pet.)).

home." *See In re Garza*, 153 S.W.3d 97, 101 (Tex. App.—San Antonio 2004, orig. proceeding). Father, however, asserts there was insufficient evidence presented to support an award of $25,000 for appellate attorney's fees. We disagree.

Admittedly, the record contains very little evidence to support the amount awarded. In his only direct testimony on the issue of appellate attorney's fees, Ortiz states:

> We, also expect, if the case is appealed and goes to the Court of Appeals, we ask the Court to grant attorney's fees in regards to appeal for $25,000. Which we expect it will take to defend this case in appeal.

However, as noted above, Ortiz had already provided testimony on his experience, his hourly rate (and the hourly rate for his staff members), and the reasonableness of these fees. Additionally, he had already testified regarding the complexity of the case, and the trial court was certainly aware of the issues and their complexity at the conclusion of a seven-day trial. *See Rust*, 2018 WL 4760157, at *7 ("The court may also consider the entire record and the common knowledge of the lawyers and judges."). Further, while Ortiz did not testify regarding the specific services and tasks that he would need to provide on appeal, "all appeals involve researching, preparing, and drafting a brief." *Trujillo v. Shafaii Investments, Ltd.*, No. 01-22-00819-CV, 2024 WL 2001612, at *12 (Tex. App.—Houston [1st Dist.] May 7, 2024, pet. denied) (mem. op.).

"Further, unlike the lodestar method, the standard described in *Yowell* for conditional appellate attorney's fees does not require an attorney's testimony to describe the number of hours required to perform particular services or the identity of the attorney performing the particular services." *Id*. (discussing *Yowell I* and *Yowell v. Granite Operating Co.*, 620 S.W.3d 335 (Tex. 2020) [*hereinafter* Yowell II]). In *Yowell I* and *Yowell II*, the Amarillo Court of Appeals and the Supreme Court of Texas both affirmed an award for appellate attorney fees based on testimony in the underlying matter that was almost identical to that in this record.

> Here, the court had evidence from the Peyton Group's attorney, who testified concerning his experience handling this type of litigation and his familiarity with reasonable fees charged in the Texas Panhandle by attorneys of varying degrees of experience. He also provided testimony concerning each of the Arthur Andersen factors, his hourly rate, and the total hours spent on the case so far. *Finally, he testified that, in his opinion, $22,000 would be a reasonable fee for handling the case through an appeal to this Court*; $7,500 would be a reasonable fee for handling a petition for review to the Supreme Court; $9,000 would be a reasonable fee for briefing on the merits; and $5,000 would be a reasonable fee for representation through oral argument and completion of proceedings in the Supreme Court.

*Yowell I*, 557 S.W.3d at 808 (emphasis added). *See also Yowell II*, 620 S.W.3d at 355 (holding that this testimony was sufficient to support award of appellate attorney's fees). The Amarillo Court of Appeals noted that, as here, the opposing party "did not cross-examine the witness regarding his estimates for attorneys' fees on appeal, present any additional evidence on the issue of appellate attorneys' fees, or otherwise contest his testimony on what a reasonable fee would be in the appeal of this case." *Yowell I*, 557 S.W.3d at 808.

We see no reason to impose a stricter standard than that applied by the Supreme Court of Texas and therefore conclude there was sufficient evidence to support the trial court's award of $25,000 to Mother for appellate attorney's fees.

**Appellate attorney's fees need not be conditioned on an unsuccessful appeal.**

Last, Father asserts the trial court abused its discretion by awarding appellate attorney's fees that are not contingent on Father's unsuccessful appeal. We disagree.

"Ordinarily when a trial court awards appellate attorney's fees, it must condition the award of fees on a successful appeal." *In re Jafarzadeh*, 05-14-01576-CV, 2015 WL 72693 *2 (Tex. App.—Dallas Jan. 2, 2015, orig. proceeding) (mem. op.). "The requirement that such awards must be conditioned arises because a court may not penalize a party for taking a successful appeal." *Id*. "In those sorts of cases an unconditional award of attorney's fees can impose a monetary penalty

on a party's ability to exercise its legal rights that acts as a chilling effect on the exercise of the legal right to appeal." *Id*.

However, "[i]n suits affecting the parent-child relationship in which attorney's fees are awarded pending appeal, deferring the fee award until resolution of the appeal is impractical because it defeats the purpose of the fee award, which is to provide the resources necessary to allow the appeal to be prosecuted by the appellee." *Id*.; *see also In re Mansour*, 630 S.W.3d 103, 108 (Tex. App.—San Antonio 2020, orig. proceeding) ("[T]he purpose of an award of appellate fees under section 109.001 in a case affecting the parent-child relationship is 'to preserve and protect the safety and welfare of the child during the pendency of an appeal as the court may deem necessary and equitable.'") (quoting TEX. FAM. CODE § 109.001(a)(5)). Accordingly, "conditioning the award of fees in a suit affecting the parent-child relationship may defeat the ability of the parent who prevails in the trial court to defend the order being appealed as one that is in the best interest of the child." *Mansour*, 630 S.W.3d at 108 (*Jafarzadeh*, 2015 WL 72693 at *2).

The record before the Court does not include any evidence suggesting that the trial court's award of appellate attorney's fees was not in the best interest of the children in this case. *See McCain v. McCain*, 636 S.W.3d 679, 686 (Tex. App.—Austin 2021, no pet.) ("We think the reasoning in *Jafarzadeh* and *Mansour* is sound and is supported by the broad discretion afforded to trial courts under Section 109.001.") (citing TEX. FAM. CODE § 109.001 for the proposition that the "trial court may 'make *any* order necessary to preserve and protect' children's safety and welfare during pendency of appeal"). Nor does the amount ordered by the trial court appear to be an effort to "set a price" on appeal to discourage resort to appeal. Instead, as already discussed above, there was testimonial evidence that supported the amount of the award. Accordingly, we

conclude the trial court did not abuse its discretion by not conditioning its award of appellate attorney's fees on Father's appeal being unsuccessful.

## CONCLUSION

Although we sustain Father's issue on statutory ground (D), we affirm the trial court's termination of Father's parental rights under statutory ground (E), and we affirm the trial court's finding that termination of Father's parental rights is in S.P.A.T.'s best interest. Therefore, we modify the trial court's termination order to delete the subsection (D) finding and AFFIRM the termination order as modified. We AFFIRM the trial court's judgment in all other respects.

H. Todd McCray